UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 10075 PBS

OCEAN TERRACE CONDOMINIUM
TRUST,                    Plaintiffs

vs.

GENERAL ELECTRIC COMPANY
                          Defendant

**BRIEF OF DEFENDANT GENERAL ELECTRIC COMPANY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I.  **Issues Presented:**

   A.  Should a summary judgment enter dismissing Plaintiff's claims where the Plaintiff cannot sustain its burden of proving that the components complained of were designed, manufactured or sold by General Electric Company (GE)?

   B.  Should a summary judgment motion dismissing Plaintiff's claims where the Plaintiff cannot sustain its burden of proving that GE had a duty to provide a rear grille and hardware for an air conditioner wall sleeve that would be squirrel proof after 30 years of use?

   C.  Should summary judgment enter dismissing Plaintiff's claims where the Plaintiff cannot sustain its burden of proving that GE had a technologically and commercially feasible safer alternative design available for its use before 1971?

D.  Should summary judgment enter dismissing Plaintiff's claims where the Plaintiff cannot sustain its burden of providing reliable and admissible expert testimony concerning the cause of an alleged component failure where the components were never available for inspection or testing and where the Plaintiff's experts cannot rule out other possible causes of component failure?

E.  Should summary judgment enter dismissing Plaintiff's claims for negligent failure to warn where the Plaintiff cannot sustain its burden of proving that GE had any duty to provide any warning?

## II.  Factual and Procedural Background

On or about 12/7/04, the Plaintiff filed a Complaint in the Essex Superior Court. GE removed this action to this Court which has diversity jurisdiction pursuant to 28 U.S.C. §1332.  The Defendant alleged three counts against the Defendant, hereby, a court for negligence, a court for breach of implied warranty of merchantability and a Court for an alleged violation of Mass. G.L. c.93A premised on a breach of implied warranty.

GE has filed a separate statement of facts and supporting exhibits which is incorporated herein by reference.

## III.  Argument

### A.  GE is Entitled to Summary Judgment as Plaintiffs Cannot Sustain their Burden of Proving Liability

Federal Rule Civil Procedure Rule 56(c) provides that summary judgment may be entered if "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law."  Summary judgment is

appropriate "if in essence there is no real dispute as to the salient facts or if only a question of law is involved." Community National Bank v. Dawes, 3639 Mass. 550, 553, 340 N.E. 2d 877 (1976).

The burden on GE as moving party to demonstrate that there is no genuine issue for trial may be discharged by showing that there is an absence of evidence to support one or more of the elements of Plaintiffs' case. Kourouvacilis v. General Motors Corporation, 410 Mass. 706 (1991); Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). Plaintiff cannot establish the essential elements of its claim against GE, and summary judgment should enter as a matter of law.

**B.   The Undisputed Material Facts Reveal that the Plaintiff Cannot Sustain Its Burden of Proving that the Rear Grille and Fasteners for the Air Conditioner In Issue Were Designed, Manufactured or Sold by General Electric.**

It is axiomatic under Massachusetts law that in a product liability case, the Plaintiff must prove that the product complained of was manufactured and sold by the Plaintiff. Carrier v. Riddell, Inc., 721 F.2d 867 (1st Cir. 1983); Mather v. Midland-Ross Corporation, 403 Mass. 688, 532 N.E. 2d 46 (1989); Payton v. Abbott Laboratories, 386 Mass. 540, 570 432 N.E. 2d 171 (1982); Garcia v. Kusan, Inc., 39 Mass. App. Ct. 322, 655 N.E. 2d 1290 (1995).

In this case the product complained about by the Plaintiff is specifically the hardware allegedly used to attach the rear grille to the air conditioner wall sleeve in issue and in particular what Plaintiff assumes was a nylon screw grommet.

The rear grille and its associated hardware were missing for about 9 months before the fire in issue. No party has been able to inspect them for the purpose of identifying the manufacturer of those parts.

The Plaintiff and Plaintiff's experts have admitted that they have no information about the original installation of the rear grille, what hardware was used or how it was installed for the air conditioner wall sleeve for Unit 3A.

The parties are in agreement that the wall sleeve for Unit 3A dates from the original construction of the Ocean Terrace building in 1971 over 30 years before the fire in issue. The history of the rear grille and associated hardware for the wall sleeve in issue is largely unknown. In 1999 there was substantial construction around the wall sleeve in conjunction with the demolition and reconstruction of the decks and the reconstruction of the mansard roof at Ocean Terrace. In the course of this construction the rear grilles of the air conditioners were to be removed.

The are no known photographs showing the rear grille and associated hardware for the wall sleeve for Unit 3A.

The only known descriptions of the rear grille and hardware for the wall sleeve in issue come from Cathy Hull and Mark DeFelice the occupants of Unit 3A at the time of the fire. They have provided conflicting descriptions of their observations. Cathy Hull described plastic screws going from the outside to the inside. Mark DeFelice described a rusted grille with a flange held by sheet metal screws. Neither type of hardware was ever used by GE to attach a rear grille to a wall sleeve. (Ex. 19, Affidavit of Harold A. "Jack" Moore). The rear grille described by Mark DeFelice was not an aluminum grille of the type used by GE but was a flanged rusted steel grille of

4

unknown origin. (Ex. 19). Both of Plaintiffs' experts Joseph Fallows and Scott Jones have testified that the testimony of Cathy Hull and Mark DeFelice does not describe GE components.

Neither Cathy Hull nor Mark DeFelice was able to testify that the grille and hardware used in the wall sleeve of Unit 3A were identical to other grilles and hardware at Ocean Terrace.

Due to the passage of time where this lawsuit was commenced over 34 years after the alleged sale of any grille or associated hardware, GE cannot locate any records of any hardware, if any, provided with the wall sleeve in issue.

The Plaintiff has no evidence that any hardware was supplied by GE, no evidence that any such hardware was used, and no evidence with respect to Unit 3A of how any such hardware was used. Instead Plaintiff assumes without basis and contrary to the known facts that the hardware originally used in the wall sleeve for Unit 3A remained in use until the Fall of 2001 and assumes that this hardware, before it disappeared, was identical to other hardware on wall sleeves installed in other units at Ocean Terrace.

Where the Plaintiff has no affirmative evidence that GE sold the hardware which disappeared from Unit 3A in the Fall of 2001 and where the only evidence reveals that this hardware was not of the type used by GE summary judgment should enter for GE.

A verdict may not be based on conjecture or surmise and expert opinion does not help if it is based on speculation. LaClair v. Silberline Manufacturing Co., 379 Mass. 21, 32, 393 N.E. 2d 867 (1979).

C.  **General Electric Had No Duty to Design an Air Conditioner Wall Sleeve that was Squirrel Proof After 30 Years of Use!**

A product manufacturer is not obligated to design against the risk of bizarre, unforeseeable accidents. A manufacturer must anticipate the environment in which its product will be used and design against the reasonably foreseeable risks attending the products use in that setting. Back v. Wickes Corporation, 375 Mass. 633, 640-641, 378 N.E. 2d 964, 969 (1978).

An implied warranty of fitness for ordinary purposes does not include unforeseeable uses or misuses of a product. Back v. Wickes Corporation, supra; Allen G. Chance Manufacturing Company, 398 Mass. 32, 34, 494 N.E. 2d 1324 (1986). The Plaintiff must prove that at the time of the accident the Plaintiff was using the product in a manner that the Defendant reasonably could have foreseen. Allen v. Chance Manufacturing Company, supra; Correia v. Firestone Tire & Rubber Company, 388 Mass. 342, 357, N.E. 2d (1983).

A manufacturer's duty is one of reasonable care, not perfection. A failure to take a special precaution against a danger that is only remotely possible is not negligence. Carter v. Yardley & Company, Ltd., 319 Mass. 92, 97, N.E. 2d (1946).

In Tibbetts v. Ford Motor Company, 4 Mass. App. Ct. 738, 358 N.E. 2d 460 (1976) the court held as a matter of law that a manufacture had no liability for the presence of a burr on decorative slots of a wheel cover. Even though an injury was possible it was not reasonable to be anticipated and to require a manufacture to discover and remove the burrs in question would establish an unreasonable standard of perfection.

6

In <u>Venezia v. Miller Brewing Company</u>, 626 F.2d 188 (1st Cir. 1980) the court held that "Even under the most expansive theories of products liability, a 'manufacturer is not an insurer and cannot be held to a standard of duty of guarding against all possible types of accidents and injuries in any way causally related to the design and manufacture of its products. <u>Schneider v. Chrysler Motors Corporation</u>, 401 F.2d 549, 557 (8th Cir. 1968).

The Plaintiff has the burden of proving that at the time of the injury that the Plaintiff was using the product in a manner that the Defendant seller reasonably could have foreseen. <u>CIGNA Insurance Company v. OY Saunatec, Ltd.</u>, 241 F.3d 1, 16 (1st Cir. 2001).

In this case it is the position of the Plaintiff that it was reasonably foreseeable to GE before 1971 that two (allegedly present) nylon screw grommets would become missing after more than 30 years of use, that a rear grille of an air conditioner would become missing, that it would not be replaced despite the immediate availability of replacement grilles from GE, that a squirrel or squirrels would nest in the air conditioner with the knowledge of the owner, that the squirrel or squirrels would allegedly gnaw on insulated wiring and that an arc would occur without tripping the building circuit breaker causing the alleged ignition of nesting materials and the alleged fire which resulted in the loss of the Ocean Terrace building.[1]

There is simply no evidence to support any determination that such a scenario was reasonably foreseeable by GE before 1971. Even assuming that some

---

[1] GE and its experts dispute that the fire had its origin in the air conditioner. The State Fire Marshall, the Gloucester Wiring Inspector and GE's experts all are in agreement that the fire did not start in the air conditioner. The Plaintiff contends that this fire started in the air conditioner based on testimony of its own in-home expert alone.

unidentified nylon screw grommet supplied by GE in 1971 or earlier was present in Unit 3A until the Fall of 2001.

The Plaintiff has no evidence that anyone could reasonably foresee before 1971 that such a device would fail for unknown reasons after 30 years of use resulting in the loss of the rear grille, that the owners of an air conditioner would fail to repair or replace the rear grille for 9 months dispute actual knowledge of squirrel activity in the air conditioner and that squirrel activity would result in a fire.

The available evidence reveals the absence of any knowledge of nylon grommet failures or missing rear grilles for air conditioners by those responsible for monitoring field reports of the performance of GE air conditioners for decades! The available evidence reveals the absence of any complaints of squirrel intrusion into through-the-wall air conditioners such as the air conditioner in issue at any time before the fire in issue and the absence of any fire loss supposedly attributable to such activity before the time of the fire in issue.

The available evidence further establishes that the Plaintiff's Rule 30(b)(6) designee and the Plaintiff's experts Joseph Fallows and Scott Jones both agree that the occupants of Unit 3A, Cathy Hull and Mark DeFelice (a licensed electrician) should have replaced the rear grille. Replacement grilles and hardware were available within 24 hours for about $23.00. The unit occupants had months to accomplish this simple task.

The wall sleeve in issue was listed by Underwriters Laboratories.

The Plaintiff is unable to produce any evidence of any pre-1971 standard requiring air conditioners to be squirrel-proof for more than 30 years. The Plaintiff

has no evidence of any manufacturer of air conditioners who considered squirrel attacks on air conditioners before 1971. The Plaintiff has no literature relevant to the community of air-conditioner manufacturers before 1971 which suggests that any consideration should be given to squirrel-proofing air conditioners.

The events complained of are precisely the type of bizarre, not reasonably foreseeable circumstances which a manufacturer does not have a duty to design against. The law simply does not impose such an unreasonable standard of perfection on a manufacturer or seller of a product.

Furthermore, the Plaintiff has no admissible evidence that a manufacturer of air conditioner wall sleeves has any duty to supply a wall sleeve with a useful life of over 30 years without the need for reasonable maintenance at the time its rear grille became missing.

The expected life of an air conditioner used in the wall sleeve in issue is 15 years or less. The wall sleeve in issue was in service with its rear grille attached for more than twice the life of the product it was used with. It outlasted the mansard roof, exterior decks and multiple doors and windows at Ocean Terrace which were replaced before the rear grille became missing.

The Plaintiff's expert Joseph Fallows originally opined in his Final Report that the wall sleeve should last for the life of the air conditioner. When he learned that the wall sleeve was twice as old as he originally assumed he changed his testimony concerning the expected useful life of the wall sleeve to state that it was longer than the life of the air conditioner but admitted that he had no opinion as to how long a

wall sleeve should last. Mr. Fallows admitted that he was not contending that an air conditioner wall sleeve that performed for more than 30 years violated any standard.

Plaintiff's expert Scott Jones admitted that he has never been involved in establishing the expected useful life of any product.

The Plaintiff has no evidence of any standard requiring the wall sleeve to retain a rear grille for more than 30 years. There is no evidence of any practice in the community of manufacturers of air conditioners that rear grilles of wall sleeves should be retained for more than 30 years. The Plaintiff has no admissible expert testimony from any qualified expert that a rear grille should be retained on a wall sleeve for more than 30 years.

In short, there is no evidence that the alleged supply by GE of a wall sleeve, rear grille and associated hardware which performed properly for more than 30 years violated any duty which GE owed to the Plaintiffs. Under such circumstances GE is entitled to summary judgment.

**D.    The Plaintiff has No Evidence of a Technologically and Commercially Feasible Safer Alternative Design Available to GE before 1971**

The Plaintiff has the burden of establishing the availability of a technologically and commercially feasible alternative design to GE before 1971. Gillespie v. Sears, Roebuck & Company, 386 F.3d 21, 26 (1st Cir. 2004); Marchant v. Dayton Tire & Rubber Company, 836 F.2d 695, 699 (1st Cir. 1988); Alves v. Mazda Motor of America, Inc., 448 F. Supp. 2d. 285, 299 (D. Mass. 2006); Back v. Wickes Corporation, supra.

The only other material which Plaintiff's expert Joseph Fallows identified as a possible material for a screw grommet was a plastic named Valox which he had to admit was not in existence in 1970. He could not identify anyone who had used Valox to make a screw grommet. He admitted that he did not know what other choices apart from nylon were available for an engineer selecting a plastic part for the application in issue in 1971. He also admitted that he could not say that any alternative means of attaching a rear grille would last better or longer than 30 years.

Similarly, Mr. Jones who admitted he was not a plastics expert asserted that there were a wide selection of polymeric materials available to GE before 1971 but he could not identify any specific material which GE could use for the application in issue and admitted that he had never done anything to evaluate the failure modes of such materials.

Mr. Jones speculated that a device known as a Tinnerman clip might be used to attach the rear grille but he did not know of any air conditioner manufacturer who had ever done so. He has never tested Tinnerman clips for use on the rear enclosure of an air conditioner. He had no knowledge of any Tinnerman clip application that had been successfully used for a period in excess of 30 years without repair or replacement.

Mr. Jones also mentioned the possibility of using a plastic injection molded grille but he was not aware of the availability of any plastic injection molded grilles before 1971. He has never tried to identify any failure modes of plastic injection molded grilles and had no data on any plastic injection molded grilles which had been in the

field for 30 years. Mr. Jones further admitted that he has never performed a design review for any alternative fastening system for the rear grille.

In short, the Plaintiff has no admissible evidence of a technologically and commercially feasible design alternative for the fastening system of the rear grille which was available to GE before 1971 which would have lasted longer and better than the fastening system selected by GE.

Mr. Jones also offered testimony of an alternative design in one other area. He suggested that it would have been reasonable for GE to address the problem of rodent infestation to have used double pole contactors in the refrigeration power circuit to provide a double line break. In essence this involves the addition of an extra switch that must be activated to energize the internal wiring of the air conditioner. If a squirrel chewed on a wire while it was deenergized no arc would occur but such a design would not prevent a squirrel induced arcing situation once the air conditioner was energized.

The problems with this testimony include: 1) there is no evidence of rodent infestation problems of GE air conditioners before 1971 or for that matter before the date of the fire and consequently, there is no evidence which would support any duty on the part of a designer even to consider such a design before 1971; 2) there is no industry standard that required such a device; 3) there is no technical literature that advocates the use of such a device; 4) Mr. Jones was unaware of the manufacturer of any air conditioner that has ever used such a device; and 5) Mr. Jones was not aware of any person other than himself that has ever expressed the opinion that such a device should be used.

This suggestion by Mr. Jones is precisely the type of unreliable ipse dixit testimony which was condemned in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 LE 2d 469 (1993) and Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

The Plaintiff has no admissible or reliable testimony of any safer alternative design which GE could have used in 1971 or earlier and in the absence of such testimony, summary judgment should enter for GE.

E. **The Plaintiff has No Admissible Evidence that the Fasteners for the Rear Grille for the Air Conditioner Wall Sleeve in Issue Failed to Perform their Function for Any Reason Attributable to GE.**

As discussed above, the fasteners for the rear grille of the air conditioner wall sleeve in Unit 3A, as described by the only known persons to have seen them, Cathy Hull and Mark DeFelice, were not a GE component. If arguendo we could suspend belief in such testimony and assume that the fasteners that failed to perform their function in retaining the rear grille in the Fall of 2001 were supplied by GE, the Plaintiff has insufficient evidence to establish that any such failure was the probable result of conduct or a design for which GE was responsible.

The Plaintiff's experts have never been able to see or inspect the fasteners because they were thrown out in the Fall of 2001.

Plaintiff's expert Joseph Fallows candidly admitted that there is no other case in which he has provided an opinion about the cause of a failure of something he never saw. He was not aware of any scientific standard that would permit someone to reach a determination as to the cause of a failure of something that is not in existence or visible. He admitted that without having the opportunity to inspect

something to determine whether there has been abuse, or misinstallation, or chemical attack that he could only speculate as to the cause of failure. He admitted that he could not rule out whether the fasteners used for the wall sleeve and grille for Unit 3A were physically or chemically abused or improperly installed.

There is no evidence of who installed the fasteners for the wall sleeve of Unit 3A which were present in the Fall of 2001. There is no evidence of how they were installed or misinstalled. There is no evidence that when they were installed they were in the same condition as when they were allegedly supplied by GE. Plaintiff's experts admit they did not try to determine the history of the fasteners. There is evidence of substantial construction activities in the area of the Unit 3A air conditioner in 1999 relating to the replacement of the decks, replacement of the mansard roof and reflashing of the air conditioner itself. There is evidence that both the Unit 3A air conditioner and the rear grille were to be removed in the course of this construction.

Mr. Jones by his own admission is not a plastics expert.

This court must function as a gate keeper in determining whether expert testimony is based on reliable methods reliably employed. <u>Daubert v. Merrell Dow Pharmaceuticals</u>, <u>supra</u>; <u>Kumho Tire Company, Ltd. v. Carmichael</u>, <u>supra</u>.

The Plaintiff has no evidence that the alleged failure of a piece of plastic hardware can be determined without at least a visual inspection of the piece. There is no evidence that any such approach has been generally accepted in any relevant scientific or technical community. There is no technical standard or peer reviewed technical or scientific literature which endorses such a concept. There is no known

error rate of such an approach. Indeed it is difficult to imagine how one could determine an error rate for opinion related to something which cannot be observed, inspected or tested.

Even a visual inspection of a failed product such as that performed in Kumho is often not enough to establish liability in a reliable way.

Where the Plaintiff's own expert has admitted that he could only speculate about the cause of any failure of the alleged plastic grommets without seeing them and has submitted that he cannot rule out causes of failure for which GE would not be responsible, the Plaintiff lacks any reliable, admissible testimony on the cause of failure of the fasteners and summary judgment should enter for GE.

F.  **The Plaintiff Cannot Sustain Its Burden of Proving That GE Was Negligent in Allegedly Failing to Provide Warnings that the Rear Grille could Fall Off.**

The Plaintiff has asserted a claim that GE was negligent in failing to provide warnings that the rear grille could fall off. The only expert testimony which Plaintiff has disclosed concerning this theory is the single statement made by Scott Jones that "GE was negligent in failing to clearly warn customers about hazards of the grille falling off and instructing customers what to do if the grille does fall off." There was no disclosed basis for this statement.

A manufacturer or seller of a product has no duty to warn of risks which are obvious or already are known. Thorson v. Mandell, 402 Mass. 744, 525 N.E. 2d 375 (1988); Fiorentino v. A. E. Staley Mfg. Co., 1 Mass. App. 428, 416 N.E. 2d 988 (189); Bavuso v. Caterpillar Industries, 408 Mass. 694, 699, 563 N.E. 2d 198, 201 (1990).

To prove that the Defendant GE Company was negligent in failing to provide a warning regarding the rear grille for the wall sleeve in issue, Plaintiff must show that GE Company knew or should have known of a non-obvious dangerous condition. Anderson v. Owens-Illinois, Inc., 799 F.2d 1 (1st Cir. 1986). There is no duty to warn of a danger unless the person on whom the duty rests has some duty to believe that a warning is needed. Carney v. Bereault, 348 Mass. 502 (1965). There is no duty to warn of an unknowable danger. Anderson v. Owens-Illinois, inc., 799 F.2d 1 (1st Cir. 1986). The duty to warn is not imposed by law as a mindless ritual. Killeen v. Harmon Grain Products, Inc., 11 Mass. App. 20, 413 N.E. 2d 767 (1980).

The Plaintiff has no evidence that GE had any reason before the time of sale in 1971 or earlier to suppose that any warning was needed of what to do if a rear grille fell off. The evidence affirmatively demonstrates that there was no known history of rear grilles falling off of wall sleeves of the type in issue or of any unreasonable or unknown danger associated with such an event. In the absence of such evidence there was no duty to warn. The evidence also affirmatively demonstrates that both Cathy Hull and Mark DeFelice knew that they should replace the grille. Furthermore, Mark DeFelice was a licensed electrician and Cathy Hull testified that she was concerned about squirrels gnawing on wires in the air conditioner.

The Plaintiff has failed to disclose the content of the warning it contends should have been given beyond Mr. Jones' statement. There is no evidence of any standard from any source requiring a warning about rear grilles falling off and no evidence that any air conditioner wall sleeve manufacturer ever provided such a warning before or after 1971.

Other than Mr. Jones <u>ipse</u> <u>dixit</u> statement the Plaintiff has no evidence that any reasonable manufacturer in the position of GE would have provided any warning in 1971 or earlier about the possibility of a rear grille falling off 30 years later. Such <u>ipse</u> <u>dixit</u> testimony is not reliable, does not meet <u>Kumho Tire</u> standards and cannot satisfy Plaintiff's burden of proof. Summary judgment should enter for GE.

### IV.   Conclusion

GE respectfully requests this Court to enter a summary judgment dismissing Plaintiff's claims as the undisputed material facts and the applicable law establish that GE has no liability to Plaintiff for a rear grille or an air conditioner wall sleeve becoming missing for unknown reasons after 30 years of use, especially where the owner of the wall sleeve knew it was missing, knew squirrels had invaded the air conditioner and, took no effective action to replace the grille for nine months!

Respectfully submitted
By its attorneys,

**CURLEY & CURLEY, P.C.**

Dated: ___12/13___, 2006

Robert A. Curley, Jr., Esq.
BBO# 109180
27 School Street, 6th Floor
Boston, MA  02108
(617) 523-2990

## CERTIFICATE OF SERVICE

I, Robert A. Curley, Jr., Esq., hereby certify that I served a true copy of the foregoing pleading by mailing a copy postage prepaid to the following counsel of record:

Paul T. Falk, Esq.
Falk Johnson LLC
20 South Clark Street
Suite 1990
Chicago, IL   60603

Steven B. Stein, Esq.
Law Offices of Thomas M. Niarchos
100 Summer Street, Suite 201
Boston, MA   02110

Ronald W. Harmeyer, Esq.
Falk Johnson, LLC
Bank One Plaza
111 East Wisconsin Avenue
Suite 1370
Milwaukee, WI   53202

Dated:  12/13/06

Robert A. Curley, Jr., Esq.