## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NUMBER: 05 10075 PBS

| | |
|---|---|
| OCEAN TERRACE CONDOMINIUM TRUST, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| GENERAL ELECTRIC COMPANY | ) ) |
| Defendant. | ) ) |

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS AND RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

### I.     PREAMBLE

On June 1, 2002, a fire occurred at the Ocean Terrace Condominium building. The entire building burned to the ground, destroying 42 homes in the process. This claim is brought by the condominium trust to recover the damages caused by the fire.

Each condominium unit in the building had a through-the-wall air conditioner. Approximately eight months before the fire, the exterior grille to the air conditioner for condominium unit 3A fell off. Thereafter, the owner of Unit 3A observed a squirrel in the air conditioner. The plaintiff alleges that the physical evidence shows that the fire originated in the air conditioner when a squirrel chewed through a wire, and electricity arced through the squirrel's nesting material.

The exterior grille that fell off was connected to the air conditioner's sleeve with plastic fasteners. After the fire, other air conditioners in the building were examined, and

it was discovered that the plastic fasteners on many of the air conditioners had failed and were failing. The plaintiffs allege that the plastic fasteners failed because they were made out of a material (nylon) which degrades when exposed to ultraviolet radiation and water. The design of the air conditioner allowed wires to be energized in the air conditioner even though the user had turned it off.

## II.    PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

### A.    UNDISPUTED FACTS THAT RAISE A GENUINE ISSUE AS TO WHETHER THE GRILLE AND PLASTIC FASTENERS WERE MADE BY GENERAL ELECTRIC.

1.    The sleeve for the air conditioner for unit 3A was manufactured and installed prior to 1975. (GE's Exhibit 19.)

2.    The sleeve for the air conditioners for units 1J and 2M were manufactured and installed prior to 1975. (Exhibit 13, Haynes Affidavit.)

3.    The design of the sleeves for units 3A, 1J and 2M is the same. (Exhibit 13, Haynes Affidavit.)

4.    The sleeves for units 3A, 1J and 2M are designed so that the exterior grille is attached to the sleeve with a plastic fastener. (Exhibit 7, Haynes Rule 26 report pages 6-7.)

5.    The plastic fasteners that secured the exterior grilles to the sleeves for units 3A, 1J and 2M left "shadow marks" on the sleeves for each unit. (Exhibit 9, Fallows deposition, pages 277-79.)

6.    The shadow marks on the sleeves for units 3A, 1J and 2M each are identical in shape and size to each other. (Exhibit 9, Fallows deposition, pages 277-79.)

7.    Starting in 1975, General Electric specified a plastic fastener of a size different

than the shadow marks left on the sleeves for units 3A, 1J and 2M. (Exhibit 9,

Fallows deposition, page 247.)

8.    There is no evidence that a post-1974 plastic fastener ever was installed on the

unit 3A sleeve. (Exhibit 9, Fallows deposition, pages 247-48.)

9.    The plastic fasteners found on the sleeves for units 1J and 2M are identical to the

part in General Electric's part drawing, number 864C709, dated June 24, 1960.

(Exhibit 12, Jones deposition, pages 62-63 and Exhibit 9, Fallows deposition

pages 223-24.)

10.    There is no evidence that General Electric changed the design of the plastic

fastener from 1960 to 1974. (GE's Exhibit 19, paragraph 4.)

11.    After the June 1, 2002 fire, when the air conditioner sleeves for units 1J and 2M

were removed from the building, the exterior grilles still were connected to the

sleeves. (Exhibit 7, Haynes Rule 26 report, pages 6-7.)

12.    The fasteners connecting the exterior grilles to the sleeves for units 1J and 2M

were white plastic with a metal screw. (Exhibit 7, Haynes Rule 26 report, pages

6-7, and referenced photos.)

13.    At the time the grille fell off the sleeve for unit 3A in October 2001, the remnants

of the fasteners were white and plasticky. (Exhibit 6, Hull deposition pages 48-

49.)

14.    After the June 1, 2002, fire, when the air conditioner sleeves for units 1J and 2M

were removed from the building, the plastic fasteners were weathered, cracked

and deteriorated. (Exhibit 9, Fallows deposition, page 224 and Exhibit 8, Fallows Rule 26 Report, pages 2-3.)

15.    At the time the grille fell off the sleeve for unit 3A in October 2001, the grille was not painted. (Exhibit 6, Hull deposition, page 22.)

16.    After the June 1, 2002, fire, when the air conditioner sleeves for unit 1J was removed from the building, the grille for unit 1J was not painted. (Exhibit 7, Haynes Rule 26 report, page 47.)

17.    Cathy Hull, the owner of unit 3A at the time of the fire, was shown a photo of the exterior grille for unit 1J, and stated that the grille in the photo was of the same general appearance as her grille. (Exhibit 6, Hull deposition, page 114.)

18.    The exterior grille for unit 3A was not removed from the sleeve from the time Lloyd Waites moved into the unit in 1985 until he sold the unit to Cathy Hull in 2000. Exhibit 15, Lloyd Waites Affidavit.

19.    The air conditioner for unit 3A was not removed or worked on from the time Cathy Hull moved into the unit until October 2001. (Exhibit 6, Hull deposition, page 15.)

20.    No witness has testified that he or she removed, or saw removed, or knows of the removal of the exterior grille from the sleeve for unit 3A.

## B.    UNDISPUTED FACTS THAT RAISE A GENUINE ISSUE AS TO WHETHER GENERAL ELECTRIC BREACHED ITS DUTY TO DESIGN A SAFE PRODUCT

21.    The design of the air conditioner sleeve for unit 3A was such that if the plastic fasteners failed, the grille fell off. (Exhibit 8, Fallows Rule 26 report, page 6.)

22.    The plastic used in the fasteners found in the sleeves for units 1J and 2M was nylon 6. . (Exhibit 8, Fallows Rule 26 report, page 2.)

23.    Nylon 6 degrades when exposed to ultraviolet radiation.  (Exhibit 8, Fallows Rule 26 report, page 2.)

24.    Nylon 6 is hygroscopic.  (Exhibit 8, Fallows Rule 26 report, page 2.)

25.    The design of the air conditioner sleeves for units 3A, 1J and 2M was such that the plastic fasteners used to connect the grille to the sleeve were exposed to sunlight and rain.  (Exhibit 8, Fallows Rule 26 report, pages 5-6.)

26.    The air conditioner removed from unit 3A after the fire was designed such that, as long as the air conditioner was plugged in, its internal wires were energized even if the air conditioner was turned off.  (Exhibit 10, Jones Rule 26 report, pages 12-14.)

27.    In 1971, it was commercially and technologically feasible to design and manufacture an air conditioner which incorporated double pole contactors, which would have resulted in the internal wires not being energized if the air conditioner was turned off.  (Exhibit 10, Jones Rule 26 report, pages 12-14.)

28.    After the grille fell off the sleeve for unit 3A in October 2001, a squirrel was observed inside the air conditioner.  (Exhibit 6, Hull deposition, page 57.)

29.    After the June 1, 2002, fire, flammable nesting material was found inside the air conditioner for unit 3A.  (Exhibit 16, Haynes deposition, pages 140-41.)

30.    After the June 1, 2002, fire, a wire was found inside the air conditioner for unit 3A which was broken and showed evidence of being chewed.  (Exhibit 7, Haynes Rule 26 report, pages 5-6.)

31.    At the time of the June 1, 2002, fire, the first firefighter to enter unit 3A unplugged the air conditioner.  (Exhibit 17, Cooney deposition, page 18.)

32.    After the June 1, 2002 fire, a large burn mark was found on the bottom of the unit

3A air conditioner. (Exhibit 7, Haynes Rule 26 report, page 6.)

33.    Fire Investigator Gordon Duquenoy concluded the origin of the fire was the unit

3A air conditioner. (Exhibit 5, Duquenoy Rule 26 report, page 7.)

34.    Engineer Evan Haynes concluded the cause of the fire was electrical arcing inside

the unit 3A air conditioner. (Exhibit 7, Haynes Rule 26 report, pages 8-9.)

35.    General Electric never evaluated the design of the air conditioner to consider what

hazards would be presented if the grille fell off. (Exhibit 11, Moore deposition,

pages 80-81.)

36.    General Electric considered the function of the grille to be only aesthetic and to

direct dispelled air. It did not consider the grille to have any function relating to

safety. (Exhibit 11, Moore deposition, page 38.)

37.    General Electric never evaluated the wiring of the air conditioner to consider

whether it would present a risk of fire if a rodent were to chew through any of the

wiring. (Exhibit 11, Moore deposition, pages 79-81.)

C.    UNDISPUTED FACTS THAT RAISE A GENUINE ISSUE AS TO WHETHER
THERE WERE TECHNOLOGICALLY AND COMMERCIALLY FEASIBLE
ALTERNATIVES TO THE PLASTIC FASTENERS

38.    In the mid-1990s, General Electric sold a through-the-wall air conditioner in

which the external grille was attached to the sleeve with metal screws only, and

not with the use of plastic fasteners. (Exhibit 14, Jones Affidavit.)

39.    Friedrich and Frigidaire sell through-the-wall air conditioners in which the

exterior grilles are attached to the sleeve with metal screws only, and not with the

use of plastic fasteners. (Exhibit 8, Fallows Rule 26 report, page 6.)

6

D.     UNDISPUTED FACTS THAT RAISE A GENUINE ISSUE AS TO WHETHER
THE PLASTIC FASTENERS FAILED FOR REASONS ATTRIBUTABLE TO
GENERAL ELECTRIC

40.     Cathy Hull never used cleaning chemicals on the unit 3A air conditioner.  (Exhibit 6, Hull deposition, page 70.)

41.     Cathy Hull never washed the inside of the air conditioner.  (Exhibit 6, Hull deposition, pages 70, 105.)

42.     Cathy Hull never repaired the air conditioner.  (Exhibit 6, Hull deposition, page 105.)

43.     Cathy Hull never replaced the grille with a replacement grille.  (Exhibit 6, Hull deposition, page 53.)

44.     From 1985 through 2000, the exterior grille on the Unit 3A air conditioner never was removed or replaced.  (Exhibit 15, Waites Affidavit.)

45.     From 1985 through 2000, the fasteners to the exterior grille never were removed or replaced.  (Exhibit 15, Waites Affidavit.)

46.     From 1985 through 2000, there never was any service or maintenance performed on the air conditioner.  (Exhibit 15, Waites Affidavit.)

47.     In 1999, the mansard roof to the building was replaced.  At no time during the re-roofing project was his air conditioner removed from its sleeve.  At no time during the re-roofing project was the exterior grille removed from the sleeve. (Exhibit 15, Waites Affidavit.)

48.     Observations made by Cathy Hull regarding the failure of the grille fasteners is consistent with the failure of the plastic fasteners.  (Exhibit 18, Duquenoy deposition, pages 83-84.)

49.     At the time of the June 1, 2002, fire, the plastic fasteners for other air conditioner

grilles on the Ocean Terrace Condominium building had failed or were in a state

of progressive failure. (Exhibit 8, Fallows Rule 26 report, pages 2-4 and Exhibit

7, Haynes Rule 26 report, pages 6-8.)

E.     UNDISPUTED FACTS THAT RAISE A GENUINE ISSUE AS TO WHETHER
GENERAL ELECTRIC WAS NEGLIGENT IN FAILING TO WARN OF THE
CONSEQUENCES OF THE GRILLE FALLING OFF

50.     The fact that the performance characteristics of nylon deteriorate when the nylon

is exposed to ultraviolet radiation and water has been well known and

documented since the 1970s. (Exhibit 8, Fallows Rule 26 report, page 3.)

51.     It was foreseeable since the 1970s that nylon being used in this application would

result in part failure and dislocation of the grille all within the useful life of the

product. (Exhibit 8, Fallows Rule 26 report, page 3.)

52.     The fact that rodents have a propensity to chew electric wires was widely known

and published prior to the fire. (Exhibit 8, Fallows Rule 26 report, pages 6-7.)


III.     PLAINTIFF'S RESPONSES TO GENERAL ELECTRIC'S STATEMENT
OF UNDISPUTED FACTS

1.     Not disputed.

2.     The fact, as stated is not disputed, but the plaintiff disputes any implication that
there are not fact witnesses who are not associated with the plaintiff that have
provided material facts.

3.     The fact, as stated is not disputed, but the plaintiff disputes any implication that
the replacement of the shingles, decks, windows and sliding doors in any way
involved the through the wall air conditioner for unit 3A. There is no such
evidence.

4.     Not disputed.

5.    While page 21 of Mr. Kotar's deposition speaks for itself, the plaintiff disputes
      the characterization of the plastic fasteners that were designed to secure the
      exterior grille to the sleeve as "hardware", which is defined as "metalware, as
      tools, locks, hinges, or cutlery".  (*Random House Unabridged Dictionary*).  The
      portion of the fastener that failed was plastic (nylon 6), not metalware.

6.    Not disputed.

7.    While the plaintiff does not dispute that Mr. Kotar is not aware of anything the
      Condominium Trust did to maintain or inspect the air conditioner wall sleeves, it
      is undisputed that the Trust's property manager, Ronda Ziner, performed periodic
      inspections of the exterior of the building, and sent letters to residents of the
      building if she observed that their air conditioner grills had fallen off.  (Exhibit
      19, Ziner deposition, pages 46-47.)

8.    The plaintiff disputes General Electric's paragraph 8.  While Mr. Kotar did not
      have specific knowledge of the facts listed therein, other witnesses do.

      8.1.    The method of installation of the wall sleeves was observed by Engineer
              Haynes during his site inspection.  (Exhibit 13, Haynes Affidavit)

      8.2.    Several witnesses have testified that the plastic fasteners found on the air
              conditioners for units 1J and 2M were the original fasteners.  (For
              example, see Exhibit 9, Fallows deposition, page 278, line 14.)

9.    While Mr. Kotar's testimony speaks for itself, other witnesses have examined the
      facts and evidence and offered facts regarding the history of unit 3A's air
      conditioner for the period of time prior to the fire.  (For example, see Exhibit 9,
      Fallows deposition, pages 274-89.)

10.   The fact, as stated, is not in dispute, but the plaintiff disputes any implication that
      delegation of maintenance responsibilities between unit owners and the
      association in any way relieves General Electric of its duty to produce a safe
      product and warn users of known dangers.

11.   The plaintiff disputes this.  Kotar's testimony was that "There's some reason to
      think the air conditioning unit may have played a role in the original fire…."
      (Exhibit 2, Kotar deposition, page 76, line 6.)

12.   The plaintiff does not dispute that Ocean Terrace had a management agreement
      with EP Management before the fire.  The plaintiff disputes any implication that
      such agreement in any way relieves General Electric of its duty to produce a safe
      product and warn users of known dangers.

13.   The plaintiff disputes this.  The association and its members were aware of the
      fact and inspected the exterior of the building and sent letters to unit owners when

she observed that exterior grilles had fallen off. (Exhibit 19, Ziner deposition, pages 47-49.)

14.    Not disputed.

15.    Not disputed.

16.    The fact, as stated, is not disputed, but the plaintiff disputes any implication that Ms. Ziner's understanding in any way relieves General Electric of its duty to produce a safe product and warn users of known dangers.

17.    The plaintiff disputes the fact as stated. Ms. Ziner was testifying as to her recollection of the project specifications. Tim Little testified as to what work actually was done based upon the inspection of the building. Tim Little's testimony is not consistent with Ms. Ziner's recollection. The plaintiff disputes any implication that the air conditioner for unit 3A was, in any way, involved in the 1999 Noblin work. Cathy Hill specifically denied that her sleeve was removed. (Exhibit 6, Hull deposition, pages 13, 104.)

18.    Not disputed.

19.    The fact, as stated is not disputed. The plaintiff disputes General Electric's characterization of the grille's plastic fasteners as "hardware" for the reasons stated above. Ms. Ziner did testify that she inspected the building for failed grilles, and did observe that other General Electric grilles were failing around the time that the unit 3A grille failed. (Exhibit 19, Ziner deposition, pages 45-47.) The plaintiff rejects any implication that the actions of a third party in any way relieves General Electric of its duty to produce a safe product and warn users of known dangers.

20.    Not disputed.

21.    Not disputed

22.    The fact, as stated, is not disputed, but the plaintiff disputes any implication that the rebuilding of the roof in any way involved any work on the unit 3A air conditioner. There is no fact to support such an implication.

23.    The plaintiff does not dispute that the memo was sent. The plaintiff disputes that the owner of unit 3A ever took any action in response to this memo. The plaintiff disputes any implication that a unit owner who did want to remove his or her air conditioner from its sleeve would – or could – do so by removing the exterior grille. (See GE's Statement of Undisputed Facts, No. 99.)

24.    Not disputed. It is undisputed that Lloyd Waites did not remove his air conditioner. (Exhibit 15, Waites Affidavit)

25.    Not disputed.

26.    Not disputed.

27.    Not disputed.

28.    The fact, as stated, is not disputed, but plaintiff disputes any suggestion that the air conditioner in the photo is for unit 3A.

29.    The plaintiff disputes this.  Page 29 of Mr. Little's deposition does not state this.

30.    The fact, as stated, is not disputed, but the plaintiff disputes any implication that any work on the building's decks in any way involved the air conditioner for unit 3A.

31.    The plaintiff disputes this.  While the original specifications called for replacement of flashing, Mr. Little testified that once work began, he personally inspected one air conditioner (not unit 3A), and decided not to replace all of the flashing.  (Exhibit 20, Little deposition, page 60.)

32.    While Mr. Little's testimony speaks for itself, the plaintiff disputes any implication that the flashing ever was replaced in unit 3A's air conditioner.

33.    The plaintiff disputes this.  While the original specifications called for replacement of flashing, Mr. Little testified that once work began, he personally inspected one air conditioner (not unit 3A), and decided not to replace all of the flashing.  (Exhibit 20, Little deposition,  page 60.)

34.    The plaintiff disputes this.  Mr. Little testified that it was decided that the air conditioners were not to be reflashed, and Mr. Little testified that he had no recollection of any covers being removed.  (Exhibit 20, Little deposition, page 40.)

35.    It is not disputed that some of the windows and doors were replaced. (Exhibit 20, Little deposition, page 41.)  The plaintiff disputes any implication that this work in any way involved the air conditioner for unit 3A.

36.    The plaintiff disputes this.  The questions and answers on pages 41-42 of Mr. Little's deposition relate to what was called for in the project's specifications, not what actually was done.  Furthermore, the "flashing" discussed on pages 41-42 of Mr. Little's deposition did not relate to air conditioner flashing.  (Exhibit 20, Little deposition, pages 41, 42, line 22.)

37.    The plaintiff disputes this.  Mr. Little repeatedly testified that he did not recall the air conditioners ever being removed.  (Exhibit 20, Little deposition, page 72, line

24; page 73, line 8.)  After on-site inspection, it was decided to not perform the work called for in the specifications.  (Exhibit 20, Little deposition, page 39, line 24.)

38.     The plaintiff disputes this.  The workers were working inside the units.  (Exhibit 20, Little deposition, page 73, line 16.)  In order for the air conditioners to be removed, the owner would have to remove it from the inside. (See GE's Statement of undisputed facts, paragraph 99.).  The owner of Unit 3A did not remove his air conditioner.  (Exhibit 15, Waites Affidavit)

39.     The fact, as stated, is not disputed, but the plaintiff disputes any implication that this work in any way involved the removal of the exterior grille for the unit 3A air conditioner.

40.     The plaintiff does not dispute the fact as stated, but disputes any implication that the exterior grille for unit 3A was damaged.  There is no evidence to support any implication that the unit 3A grille was damaged.

41.     The plaintiff disputes this fact as stated.  Mr. Little's recommendation was not for the replacement of the air conditioner pans during the 1999 re-roofing project.  Rather, the recommendation was that if any unit owners replaced their air conditioners at some undetermined time in the future, the pans also should be replaced.  (Exhibit 20, Little deposition, page 134, line 21.)  The plaintiff disputes any implication that the pan on unit 3A ever was replaced.

42.     Not disputed.

43.     The plaintiff disputes this.  Lloyd Waites states that he did not sell unit 3A to Cathy Hull until 2000.  (Exhibit 15, Waites Affidavit)

44.     Not disputed.

45.     Not disputed.

46.     Not disputed.

47.     Not disputed.

48.     Not disputed.

49.     While Ms. Hull's testimony speaks for itself, the factual record dispute's Ms. Hull's recollection.  They physical evidence obtained from unit 3A after the fire establishes the design and number of connection points.  All four fastening points were not the same.  (Exhibit 8, Fallows Rule 26 report, page 6.)

50.     The plaintiff disputes this. Ms. Hull specifically rejected that she saw a screw
        head outside the grille. (Exhibit 6, Hull deposition page 48, line 16.) Ms. Hull's
        testimony demonstrates that she was not testifying as to specific recollections, but
        rather she was making assumptions not supported by any evidence as to the
        design of the grille. ("I don't know that I really had taken particular note of them
        but, yes, because I knew it was attached." Exhibit 6, Hull deposition, page 48 line
        11.)

51.     The plaintiff disputes this. Notwithstanding Cathy Hull's vague recollection as to
        a remnant of a plastic fastener that she saw for a moment years earlier, evidence
        establishes that the fasteners that had been installed in unit 3A's air conditioner
        were identical in every regard to the fasteners found in the air conditioners for
        units 1J and 2M. (Exhibit 9, Fallows deposition, page 277.)

52.     The plaintiff disputes this. Given the design of the fasteners in units 1J and 2M, it
        is reasonable for the jury to conclude that what Cathy Hull was looking at was not
        a sheered off screw going from the outside toward the inside, but rather she was
        looking at the pointed tip of the screw that was going from the inside toward the
        outside. It is up to the jury to decide what inferences should be drawn from the
        testimony.

53.     Not disputed.

54.     The plaintiff does not dispute that Ms. Hull's testimony speaks for itself. The
        plaintiff disputes any implication that Ms. Hull was aware, or should have been
        aware of any fire hazard caused by the failure of the plastic fastener. Ms. Hull
        testified that her concern is that the air conditioner would stop working, not that it
        would burn down the building. (Exhibit 6, Hull deposition, page 62, line 11.)

55.     The plaintiff does not dispute that Ms. Hull did not attempt to obtain a
        replacement part, but it does dispute any implication that such fact is a defense to
        plaintiff's breach of warranty claim or any implication that Ms. Hull did not act in
        a reasonable manner. The plaintiff further disputes any implication that Ms.
        Hull's actions relieved General Electric of its duties to make a safe product and
        warn users of known dangers.

56.     The plaintiff does not dispute the fact as stated, but it does dispute any implication
        that such fact is a defense to plaintiff's breach of warranty claim or any
        implication that Mr. DeFelice did not act in an reasonable manner. The plaintiff
        further disputes any implication that Mr. DeFelice's actions relieved General
        Electric of its duties to make a safe product and warn users of known dangers.

57.     Not disputed.

58.     The plaintiff does not dispute the fact as stated, but it does dispute any implication
        that such fact is a defense to plaintiff's breach of warranty claim or any

implication that Ms. Hull did not act in a reasonable manner. The plaintiff further disputes any implication that Ms. Hull's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

59.    The plaintiff disputes this. Ms. Hull testified that was concerned that the mechanical parts might rust and dirt might get inside. (Exhibit 6, Hull deposition, page 62, line 11.)

60.    The plaintiff does not dispute that the second screen lasted a week and a half. (Exhibit 6, Hull deposition, page 63, line 23.)

61.    The plaintiff disputes General Electric's characterization of the evidence. While Ms. Hull no linger had a specific recollection of how the grille was covered from the inter of 2001-02 until the fire, she did testify that it was covered. ("I remember I wouldn't have liked it just left it all winter. I can't imagine that I would agree to being fine with it being open all winter." Exhibit 6, Hull deposition, page 66 line 5.)

62.    While the plaintiff does not dispute that Ms. Hull's testimony speaks for itself, it does dispute any implication that Ms. Hull knew, or should have known, that the facts as she understood them presented a risk of fire. There is no evidence that Ms. Hull believed that a squirrel in her air conditioner for a short period of time presented a risk of fire.

63.    The plaintiff does not dispute the fact as stated, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Ms. Hull did not act in an reasonable manner. The plaintiff further disputes any implication that Ms. Hull's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

64.    The plaintiff does not dispute the fact as stated, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Ms. Hull did not act in an reasonable manner. The plaintiff further disputes any implication that Ms. Hull's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

65.    The plaintiff disputes this. As the cat has not been deposed, no one knows where its attention was focused. The plaintiff further disputes any implication that the behavior of a cat is admissible evidence regarding the cause and origin investigation. Further, the plaintiff disputes any implication that any potential ignitions source was identified on the side of the door opposite the air conditioner.

66.    The plaintiff disputes this. Ms. Hull recalls seeing white plastic and a part of a screw without a head. (Exhibit 6, Hull deposition, page 110.) The photo shown to her is of white plastic and the pointed end of a screw. The plaintiff disputes that this issue should be taken from the jury.

67.    The fact as stated is not disputed, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Mr. DeFelice did not act in a reasonable manner. The plaintiff further disputes any implication that Mr. DeFelice's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

68.    Not disputed.

69.    While the plaintiff does not dispute that Mr. DeFelice stated this, it does dispute that the grille was rusty or that it was fastened in the manner described by Mr. DeFelice. Ms. Hull provided testimony that contradicts Mr. DeFelice's testimony. She testified that the grille was the same as the grille in deposition exhibit 3, which depicts an aluminum grille, not a steel grille that could rust. (Exhibit 6, Hull deposition, page 114.)

70.    While the plaintiff does not dispute that Mr. DeFelice stated this, it does dispute that the grille was fastened this way. The sleeve for Unit 3A does not contain any of the screw holes that Mr. DeFelice claims to have observed. (Exhibit 14, Jones Affidavit.)

71.    While the plaintiff does not dispute that Mr. DeFelice stated this, it does dispute that the grille was fastened this way. The sleeve for Unit 3A does not contain any of the screw holes that Mr. DeFelice claims to have observed. (Exhibit 14, Jones Affidavit.)

72.    Not disputed.

73.    While the plaintiff does not dispute that Mr. DeFelice stated this, it does dispute that the grille was fastened this way. The sleeve for Unit 3A does not contain any of the screw holes that Mr. DeFelice claims to have observed. (Exhibit 14, Jones Affidavit.)

74.    The fact as stated is not disputed, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Mr. DeFelice did not act in a reasonable manner. The plaintiff further disputes any implication that Mr. DeFelice's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

75.    The fact as stated is not disputed, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Mr. DeFelice did not act in a reasonable manner. The plaintiff further disputes any implication that Mr. DeFelice's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

76.    While the plaintiff does not dispute that Mr. DeFelice stated this, it does dispute that the grille was fastened this way. The sleeve for Unit 3A does not contain any of the screw holes that Mr. DeFelice claims to have observed. (Exhibit 14, Jones Affidavit.)

77.    While the plaintiff does not dispute that Mr. DeFelice stated this, it does dispute that the grille was fastened this way. The sleeve for Unit 3A does not contain any of the screw holes that Mr. DeFelice claims to have observed. (Exhibit 14, Jones Affidavit.)

78.    While the plaintiff does not dispute that Mr. DeFelice stated this, it does dispute that the grille was fastened this way. The sleeve for Unit 3A does not contain any of the screw holes that Mr. DeFelice claims to have observed. (Exhibit 14, Jones Affidavit.)

79.    Not disputed.

80.    The fact as stated is not disputed, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Mr. DeFelice did not act in a reasonable manner. The plaintiff further disputes any implication that Mr. DeFelice's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

81.    While the plaintiff does not dispute that Mr. DeFelice said this, the plaintiff does dispute that it happened. Ms. Hull provided testimony that contradicts this. (Exhibit 6, Hull deposition, page 51.)

82.    The fact as stated is not disputed, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Mr. DeFelice did not act in a reasonable manner. The plaintiff further disputes any implication that Mr. DeFelice's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

83.    The fact as stated is not disputed, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Mr. DeFelice or Ms. Hull did not act in a reasonable manner. The plaintiff further disputes any implication that Mr. DeFelice's or Ms. Hull's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

84.    The plaintiff disputes this. Ms. Hull provides testimony that contradicts this. ("I don't know if it was the whole winter. I don't think so. I felt like I got rid of them." Exhibit 6, Hull deposition, page 68.)

85.    The fact as stated is not disputed, but it does dispute any implication that such fact is a defense to plaintiff's breach of warranty claim or any implication that Mr.

DeFelice or Ms. Hull did not act in a reasonable manner. The plaintiff further disputes any implication that Mr. DeFelice's or Ms. Hull's actions relieved General Electric of its duties to make a safe product and warn users of known dangers.

86.    While the plaintiff does not dispute that Mr. DeFelice said this, it does dispute the testimony. Ms. Hull testified to facts that contradicted Mr. DeFelice. (Exhibit 6, Hull deposition, pages 110, 114.)

87.    Not disputed.

88.    The plaintiff disputes this. Other qualified fire cause and origin experts have reached the conclusion that the area of origin was the air conditioner. This is a disputed fact that should not be taken from the jury. (See Exhibit 5, Duquenoy Rule 26 report, and Exhibit 7, Haynes Rule 26 report.)

89.    Not disputed.

90.    Not disputed.

91.    Not disputed.

92.    The plaintiff disputes this. The testimony from former General Electric employees is that the grille fasteners should last as long as the sleeve, which is for the duration of the building. (Exhibit 8, Fallows Rule 26 report, page 3. "The grille should stay on for the life of the product.")

93.    Not disputed.

94.    While the plaintiff does not dispute that Mr. Moore has no such knowledge, it does dispute any implication that the failure of the plastic fasteners on Unit 3A's grille was an isolated incident. Several grilles on the Ocean Terrace building had failed around the time of the fire, and the grille on the Nortu Jappah building in Vernon, Connecticut, failed around the same time. (Exhibit 7, Haynes Rule 26 report, page 8.)

95.    The plaintiff disputes this. The purpose of the grille is to protect the electrical components from damage. (Exhibit 8, Fallows Rule 26 report, page 6.)

96.    The plaintiff disputes this. The purpose of the grille is to protect the electrical components from damage. (Exhibit 8, Fallows Rule 26 report, page 6.)

97.    While the plaintiff does not dispute the lack of knowledge on the part of General Electric's employee, it does dispute the implication that squirrels getting inside the air conditioner were not a risk just because Mr. Moore did not realize the risk.

To the contrary, Mr. Moore's lack of comprehension of this risk was why the product was defective.

98.    While the plaintiff does not dispute the lack of knowledge on the part of General Electric's designated witness, it does dispute the implication that such lack of knowledge is a defense to plaintiff's breach of warranty claim, or the implication that such lack of knowledge relieves General Electric to design a safe air conditioner and warn its users of dangers known in the industry. The fact that General Electric failed to recognize and warn of the hazard known to others is one of the plaintiff's causes of action.

99.    Not disputed.

100.    The plaintiff does not dispute that General Electric failed to perform any sort of risk analysis on the products it sold, or failed to recognize the risk and make necessary design changes to eliminate or warn of the risk.

101.    While the plaintiff does not dispute that the air conditioner in question is UL listed, it does dispute that the sleeve and exterior grille are UL listed. It further disputes that the plastic fasteners do, in fact, meet UL's performance requirements for such parts. According to a former GE Plastics employee, they do not. (Exhibit 10, Jones Rule 26 report, pages 9-12. See also, Exhibit 8, Fallows Rule 26 report, pages 7-9.) Further, the plaintiff disputes any implication that listing by UL fulfills a manufacturer's duty under Massachusetts law to design a safe product.

102.    The plaintiff disputes this. General Electric has produced no evidence to support this contention. A former GE Plastics employee testified that the plastic fasteners incorporated into the sleeve did not meet UL's performance requirements for such parts. (Exhibit 10, Jones Rule 26 report, pages 9-12. See also, Exhibit 8, Fallows Rule 26 report, pages 7-9.) There is no evidence that the plastic parts ever were tested. Further, the plaintiff disputes any implication that listing by UL fulfills a manufacturer's duty under Massachusetts law to design a safe product.

103.    The plaintiff does not dispute when the air conditioner was last sold or Sanyo's role in its production. The plaintiff does dispute the last sentence of this paragraph for the reasons stated in its responses to paragraphs 101 and 102.

104.    The plaintiff disputes this. It is widely known in the industry that short circuits can occur without the circuit breaker tripping. (Exhibit 16, Haynes deposition, page 80.)

105.    The plaintiff disputes this for several reasons. First of all, it is not a fact, it is a characterization of evidence. It is the job of the jury to make this decision. Second, the testimony of Ms. Hull is consistent with the grille and fasteners sold by General Electric. (Exhibit 12, Jones deposition, pages 83-84.) Third, Mr.

DeFelice's testimony is contradicted by the physical evidence. Fourth, while Mr. Moore makes his own characterization about the similarity of the GE product to Ms. Hull's observations, former GE Appliance Park engineer and product manager Scott Jones made the exact opposite characterization. (Exhibit 12, Jones deposition, pages 83-84.)

106.    Not disputed.

107.    Not disputed.

108.    While the plaintiff does not dispute that Mr. Crabb has no such knowledge, it does dispute any implication that the failure of the plastic fasteners on Unit 3A's grille was an isolated incident. Several grilles on the Ocean Terrace building had failed around the time of the fire, and the grille on the Nortu Jappah building in Vernon, Connecticut, failed around the same time. (Exhibit 7, Haynes Rule 26 report, pages 6-8 and Exhibit 8, Fallows Rule 26 report, pages 3-5.) General Electric's admission of its failure to properly monitor the field performance of its products is not a defense to plaintiff's claim that General Electric was negligent in failing to monitor the filed performance of its air conditioner.

109.    Not disputed.

110.    The plaintiff disputes this. The statement of fact confuses the air conditioner chassis with the sleeve. The air conditioner was manufactured in 1985. The sleeve was installed in 1971. These facts are undisputed.

111.    The plaintiff disputes the characterization of Mr. Fallows' findings as an "assumption". The record establishes the factual foundation for the conclusion that the grille on unit 3A's air conditioner was installed in 1971. (Exhibit 9, Fallows deposition, pages 274-293.)

112.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that the record does not contain evidence that allows experts to reach conclusions regarding the design and material of the plastic fasteners for the exterior grille for the unit 3A air conditioner.

113.    The plaintiff disputes this. (Exhibit 9, Fallows deposition, pages 274-293.)

114.    The plaintiff disputes this. (Exhibit 9, Fallows deposition, pages 274-293.)

115.    The plaintiff disputes this. (Exhibit 9, Fallows deposition, pages 274-293.)

116.    The plaintiff disputes this. (Exhibit 9, Fallows deposition, pages 274-293.)

117.    The plaintiff disputes this characterization of Mr. Fallows' statement. Mr. Fallows was quoting General Electric's own statement of the life expectancy of the unit.

118.    The plaintiff disputes this characterization of Mr. Fallows' testimony. Mr. Fallows reference to a 15 year life expectancy is a reference to General Electric's own statement. In his Rule 26 report, which was issued before General Electric's experts rule 26 reports, Mr. Fallows states "the grille should stay on for the life of the product." (Exhibit 8, Fallows Rule 26 report, page 3.)

119.    While the plaintiff does not dispute that Mr. Fallows' affidavit speaks for itself, it does dispute any implication that the consensus, or lack thereof, of any group or body as to how long a grille should last in any way relieves General Electric of its duty to design a safe product and warn users of dangers created by the product.

120.    The plaintiff disputes this characterization of the evidence. Kathy Hull admitted in her deposition that her grille looked the same as the grille on unit 1J. (Exhibit 6, Hull deposition, page 114.) It is undisputed that Mark DeFelice's testimony is not consistent with the physical evidence. (Exhibit 14, Jones Affidavit)

121.    The plaintiff disputes this. Fallows testified to the contrary. (Exhibit 9, Fallows deposition, page 285.) Cathy Hull testified that she did not abuse or chemically treat the plastic fasteners. (Exhibit 6, Hull deposition, page 70.)

122.    While Mr. Fallows' testimony speaks for itself, the plaintiff disputes any implication that there is an insufficient factual basis for Mr. Fallows to form is opinions.

123.    While Mr. Fallows' testimony speaks for itself, the plaintiff disputes any implication that there is an insufficient factual basis for Mr. Fallows to form is opinions. This is for the jury to decide.

124.    The plaintiff disputes this. Mr. Fallows explained the factual basis for his opinions, and why they are not speculation. (Exhibit 9, Fallows deposition, pages 274-94.)

125.    While Mr. Fallows' testimony speaks for itself, the plaintiff disputes any implication that there is an insufficient factual basis for Mr. Fallows to form is opinions. This is for the jury to decide.

126.    The plaintiff disputes this. He did review UL 484. (Exhibit 9, Fallows deposition, page 258.)

127.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that Mr. Fallows does not have sufficient factual background on nylon to form his opinions. (Exhibit 8, Fallows Rule 26 report, page 3.)

128.    The plaintiff disputes this. Mr. Fallows identified several alternative designs that could have been used. (Exhibit 8, Fallows Rule 26 report, page 6.)

129.    While the plaintiff does not dispute that Mr. Fallows' testimony speaks for itself, it does dispute any implication that there were not alternative materials and methods for attaching the grille to the sleeve available in 1971. (Exhibit 14, Affidavit of Scott Jones and Exhibit 8, Fallows Rule 26 report, pages 5-6.)

130.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that any actions of Ms. Hull in any way are a defense to plaintiff's breach of warranty claim, or that they relieve General Electric of its duty to design a safe product and warn its users of dangers created by the product.

131.    The plaintiff disputes this characterization of the evidence. Whatever a "useful product life" expert may be, Mr. Fallows is an expert in the use of polymers in the use of appliances, as General Electric employed him as such. (Exhibit 8, Fallows Rule 26 Report, Fallows' CV attached at end.)

132.    While Mr. Fallows' testimony speaks for itself, the plaintiff disputes any implication that the factual record does not establish viable alternative designs. (Exhibit 14, Affidavit of Scott Jones.)

133.    While the plaintiff does not dispute the fact as stated, the record does establish that the fact that rodents chew on wires was well known and published prior to the fire. (Exhibit 8, Fallows Rule 26 report, pages 6-8.)

134.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

135.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

136.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

137.    Not disputed.

138.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that there is insufficient facts in the record for Mr. Jones to form his opinions. (Exhibit 9, Fallows deposition, pages 274-94, and Exhibit 7, Haynes Rule 26 report, pages 5-6. See also Exhibit 10, Jones Rule 26 report.)

139.   The plaintiff disputes this. The record establishes that the grille was not mis-installed. (Exhibit 9, Fallows deposition, page 282.)

140.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

141.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

142.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

143.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

144.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

145.   The plaintiff disputes this. Mr. Jones was aware of several 1971 vintage General Electric air conditioners on the Ocean Terrace building that had failed grommets. (Exhibit 7, Haynes Rule 26 report, pages 6-7 and Exhibit 8, Fallows Rule 26 report,  pages 4-5.)

146.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product. Jones does have knowledge of competitors' designs. He also is aware of alternative designs used by General Electric itself. (Exhibit 14, Jones Affidavit.)

147.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

148.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that this is relieves General Electric of its duty under Massachusetts law to design a safe product and warn its uses of dangers created by the product.

149.   While the plaintiff does not dispute the fact as stated, it does dispute any implication that Mr. Jones does not have a sufficient factual foundation to form the opinions contained in his Rule 26 report.

150.    While the plaintiff does not dispute the fact as stated, it does dispute any
        implication that any action son the part of Ms. Hull or Mr. DeFelice are a defense
        to plaintiff's claims or that their actions relieve General Electric of its duty under
        Massachusetts law to design a safe product and warn its uses of dangers created
        by the product.

151.    Not disputed.

152.    While the plaintiff does not dispute the fact as stated, it does dispute any
        implication that this is relieves General Electric of its duty under Massachusetts
        law to design a safe product and warn its uses of dangers created by the product.

153.    While the plaintiff does not dispute the fact as stated, it does dispute any
        implication that this is relieves General Electric of its duty under Massachusetts
        law to design a safe product and warn its uses of dangers created by the product.

154.    The plaintiff disputes this characterization of the testimony.  Mr. Jones explains in
        his Rule 26 report how the use of double pole contactors would have prevented
        this fire.  (Exhibit 10, Jones Rule 26 Report, pages 12-14.)

155.    While the plaintiff does not dispute the fact as stated, it does dispute any
        implication that plaintiff's experts have not identified several available alternative
        methods for attaching the grille, or the implication that General Electric was
        relieved of its duty to warn of the hazard created by its use of a plastic fastener.
        (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report,
        pages 5-7.)  Jones also identified an alternative design used by General Electric
        itself.  (Exhibit 14, Jones Affidavit.)

156.    While the plaintiff does not dispute the fact as stated, it does dispute any
        implication that plaintiff's experts have not identified several available alternative
        methods for attaching the grille, or the implication that General Electric was
        relieved of its duty to warn of the hazard created by its use of a plastic fastener.
        (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report,
        pages 5-7.)  Jones also identified an alternative design used by General Electric
        itself.  (Exhibit 14, Jones Affidavit.)

157.    While the plaintiff does not dispute the fact as stated, it does dispute any
        implication that plaintiff's experts have not identified several available alternative
        methods for attaching the grille, or the implication that General Electric was
        relieved of its duty to warn of the hazard created by its use of a plastic fastener.
        (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report,
        pages 5-7.)  Jones also identified an alternative design used by General Electric
        itself.  (Exhibit 14, Jones Affidavit.)

158.    While the plaintiff does not dispute the fact as stated, it does dispute any
        implication that plaintiff's experts have not identified several available alternative

methods for attaching the grille, or the implication that General Electric was relieved of its duty to warn of the hazard created by its use of a plastic fastener. (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report, pages 5-7.) Jones also identified an alternative design used by General Electric itself. (Exhibit 14, Jones Affidavit.)

159.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that plaintiff's experts have not identified several available alternative methods for attaching the grille, or the implication that General Electric was relieved of its duty to warn of the hazard created by its use of a plastic fastener. (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report, pages 5-7.) Jones also identified an alternative design used by General Electric itself. (Exhibit 14, Jones Affidavit.)

160.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that plaintiff's experts have not identified several available alternative methods for attaching the grille, or the implication that General Electric was relieved of its duty to warn of the hazard created by its use of a plastic fastener. (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report, pages 5-7.) Jones also identified an alternative design used by General Electric itself. (Exhibit 14, Jones Affidavit.)

161.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that plaintiff's experts have not identified several available alternative methods for attaching the grille, or the implication that General Electric was relieved of its duty to warn of the hazard created by its use of a plastic fastener. (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report, pages 5-7.) Jones also identified an alternative design used by General Electric itself. (Exhibit, Jones Affidavit.)

162.    The plaintiff disputes the characterization of this fact in that Engineer Joe Fallows and Engineer Evan Haynes did evaluate the condition of the plastic fasteners form units 1J and 2M and concluded that they degraded due to weathering, not abuse. (Exhibit 8, Fallows Rule 26 report, pages 3-5.)

163.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that plaintiff's experts have not identified several available alternative methods for attaching the grille, or the implication that General Electric was relieved of its duty to warn of the hazard created by its use of a plastic fastener. (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report, pages 5-7.) Jones also identified an alternative design used by General Electric itself. (Exhibit 14, Jones Affidavit.)

164.    While the plaintiff does not dispute the fact as stated, it does dispute any implication that plaintiff's experts have not identified several available alternative methods for attaching the grille, or the implication that General Electric was

relieved of its duty to warn of the hazard created by its use of a plastic fastener. (Exhibit 10, Jones Rule 26 report, page 15 and Exhibit 8, Fallows Rule 26 report, pages 5-7.)  Jones also identified an alternative design used by General Electric itself.  (Exhibit 14, Jones Affidavit.)

By its attorneys,

**FALK METZ LLC**

Dated:  2 - 9 - 07

Paul T. Falk
20 South Clark Street, Suite 1900
Chicago, IL  60603
Tele:   312-922-5800

25

## *CERTIFICATE OF SERVICE*

I, Paul T. Falk, hereby certify that I served a true copy of the foregoing pleading by mailing a copy postage prepaid to the following counsel of record:

Robert A. Curley, Esq.
CURLEY & CURLEY P.C.
27 School Street
Boston, MA 02108
BBO #109180

Dated: 2 - 9 ____, 2007

Paul T. Falk