1/19/2006 Moore, H.D.

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2
                CIVIL ACTION NO.05 10075 PBS
 3
 4      OCEAN TERRACE              )
        CONDOMINIUM TRUST           )
 5                      PLAINTIFF)
                                   )
 6         vs.                     )
                                   )
 7      GENERAL ELECTRIC COMPANY )
                                   )
 8                      DEFENDANT)
 9
10
11
                  DEPOSITION OF H. D. MOORE
12
                     TAKEN BY PLAINTIFF
13
14
15
                    LOUISVILLE, KENTUCKY
16
                      January 19, 2006
17
                        VOL. I of II
18
19
20
21
22
23
                   VIRGINIA KLAPHEKE, CCR
24                    2818 Hoock Avenue
                     Louisville, KY  40205
25              (502) 458-1755/(800) 782-3517
```



PLAINTIFF'S EXHIBIT 11

1/19/2006 Moore, H.D.

```
1         A.   We are working with G.E. Plastics
2    to looking at an alternative material than we
3    are currently using.
4         Q.   Okay.  I think I misunderstood
5    you before.  You are looking for an
6    alternative to Zoneline, is that what you
7    said?
8              MR. CURLEY:  Objection.
9              THE WITNESS:  Looking at an
10   alternative material for an outdoor grill than
11   we are currently using.
12        Q.   You are currently using Zoneline?
13        A.   Zoneline is a type of air
14   conditioner, heat/cool air conditioner.
15        Q.   Okay.
16        A.   The outdoor grill is attached to
17   the rear outside of that.
18        Q.   That's what I misunderstood.
19   What is the material currently?
20        A.   Zycloy.
21        Q.   Can you spell that?
22        A.   Z-Y-C-L-O-Y, a G.E. Plastics
23   material.
24        Q.   You are looking for an
25   alternative to Zycloy?
```

38

1/19/2006 Moore, H.D.

1  from the field, how would you respond?
2              MR. CURLEY:  Object to the
3  hypothetical form of the question.
4              THE WITNESS:  I would have to
5  acquire a little more information as to how
6  that could happen.  If a person told me that
7  there was an outdoor grill that was missing,
8  then it's a pretty obvious explanation, and
9  they would be told to replace the grill.
10       Q.   Would you inquire as to why the
11  grill was missing?
12              MR. CURLEY:  Object as to form.
13              THE WITNESS:  May or may not.
14  That's difficult to answer.
15       Q.   These grills on the J Series,
16  stamped aluminum grill, air conditioners, by
17  design, they cannot be unfastened from the
18  outside, can they?
19       A.   Correct.
20       Q.   You need to remove the chassis
21  and unscrew them from the inside?
22       A.   That's correct.  All our built-in
23  and Zoneline grills are designed to be
24  installed from the inside for a specific
25  reason.

1/19/2006 Moore, H.D.

1  Q.  And that is?
2  A.  That it's difficult to install a
3  grill on the outside above the first floor, so
4  if you have a multi-story building, you have
5  to be able to do that from inside the room.
6  There's another reason.
7  Q.  That is?
8  A.  That is for security.  You do not
9  want someone to be able to remove the outdoor
10 grill from the outside, and be able to push
11 the air conditioner into the room and get into
12 the property.
13 Q.  If a squirrel were to get inside,
14 would you consider that -- by inside, I mean
15 inside of a J Series air conditioner, would
16 you consider that to be a safety hazard?
17        MR. CURLEY:  Objection.
18        THE WITNESS:  No -- only for the
19 squirrel.
20 Q.  Is that because of the fan?
21 A.  Yes.
22 Q.  The fan is the safety hazard for
23 the squirrel?
24 A.  The moving fan, yes.
25 Q.  So, other than noise and general

1/19/2006 Moore, H.D.

```
 1    nuisance of a squirrel getting inside of a J
 2    Series air conditioner, is that considered a
 3    risk, or hazard to design against?
 4           A.   I don't ever recall that being
 5    something that was discussed as being a risk.
 6           Q.   Is it something that was ever --
 7    with a customer was ever warned about?
 8           A.   I'm not aware of any warnings
 9    associated with squirrels.
10           Q.   What about birds?
11           A.   There's no warning on birds,
12    because we -- grills are designed to prevent
13    birds from getting into the product.
14           Q.   If the grill falls off, then
15    birds can get in?
16                MR. CURLEY:  Objection.
17                THE WITNESS:  Sure.
18           Q.   Is there any, or has there been,
19    to your knowledge, any warning to the consumer
20    about safety hazards that may be created if
21    the grill falls off?
22           A.   I'm not aware of any.
23           Q.   Would you expect the end consumer
24    to be aware of safety hazards created by the
25    grill falling off?
```