UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NUMBER: 05 10075 PBS

| | |
|---|---|
| OCEAN TERRACE CONDOMINIUM TRUST, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| GENERAL ELECTRIC COMPANY | ) ) |
| Defendant. | ) ) |

### AFFIDAVIT OF EVAN K. HAYNES

I, Evan Haynes, on oath and depose, state as follows:

1. I am over the age of 18, and have actual knowledge of the following facts.

2. I am a professional engineer. My curriculum vitae is attached to this affidavit as Exhibit Haynes-A

3. At the time of the fire which is the subject of the above-captioned lawsuit, I was employed by St. Paul Travelers Insurance, which insured the Ocean Terrace Condominium building. I was given the assignment of assisting fire origin and cause investigator Gordon Duquenoy in determining the cause of the fire.

4. I have been named as an expert witness in this case. As required by Rule 26 of the Federal Rules of Civil Procedure, I have produced a report which contains my opinions and the bases for them. It is attached as Exhibit Haynes-B.

5. During my investigation of the loss scene, I took many photos of the remains of the building. One of the photos which I took was marked as Exhibit 3 to the deposition of Cathy Hull. The photograph marked as Exhibit 3 depicts the grille



PLAINTIFF'S EXHIBIT 13

- 2 -

for Unit 1J of the Ocean Terrace Condominium Trust. For reference purposes, the photo is attached to this affidavit as Exhibit Haynes-C.

6. The Hull Deposition Exhibit 3 photo shows the grille to the Unit 1J air conditioner. It also shows the remains of the plastic fasteners that attached the grille to the sleeve. In the photo, the plastic fasteners are degraded and broken. The fasteners are white in color and are plastic.

7. Also attached to this affidavit is another photo marked as Exhibit Haynes-D. The 1J air conditioner is visible on the far right side of the photo on the first floor. Directly above it is the air conditioner for unit 2J. Both of these air conditioners had identical exterior grilles.

8. On page 114 of her deposition, Cathy Hull testified that the grille on her air conditioner was the same as the grille on Unit 1J.

9. I have examined the grille, sleeve and fasteners to the Unit 1J air conditioner. My examination of these items leads me to conclude that the method of attaching the exterior grille to the sleeve on the Unit 1J air conditioner was identical to the method of attaching the exterior grille to the sleeve on the Unit 3A air conditioner.

10. Given that the fasteners from the Unit 1J grille matched the shadow marks on the Unit 3A sleeve, the condition of the fasteners, the condition of the metal on the sleeve and the grille and the fact that nearly all of the grilles remaining on the building after the fire were identical, I conclude that the grille on the Unit 1J air conditioner was the original grille installed on the sleeve at the time of installation. Thus, it is a pre-1975 General Electric grille.

12. During my inspection of the site, I personally viewed the method of installation for the sleeves in Units 3A, 1J and 2M. Attached as Exhibit Haynes- E is a photo of the inside of the sleeve of Unit 3A. This photo shows that the sleeve for Units 3A was nailed to the structural members of the building's exterior walls. My personal observations confirmed that the sleeves for Units 1J and 2M were attached in the same manner.

SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS _8TH_ DAY OF _February_, 2007.

_____
Evan K. Haynes

SUBSCRIBED AND SWORN TO before me this _8TH_ day of _February_ 2007.

_____
Notary Public
My commission expires: _3-31-09_

2



**HAYNES ENGINEERING**
Forensic Engineering / Fire Origin & Cause

83 LOVERS LANE
EAST LYME, CT 06333

Evan K. Haynes, PE, CFEI

Phone: (860) 739-0778
Fax: (866) 662-8115
ehaynes@ct.metrocast.net

## CURRICULUM VITAE

### PROFESSIONAL DESIGNATIONS

- Registered Professional Engineer in multiple states. Please inquire about current licensing.
- Certified Fire and Explosion Investigator (CFEI), National Association of Fire Investigators
- Certified Fire Investigation Instructor (CFII), National Association of Fire Investigators
- Professional Member Grade - Society of Fire Protection Engineers

### EDUCATION

Master of Science degree in Fire Protection Engineering received in December 1994 from Worcester Polytechnic Institute. The degree program included:

- Coursework in fire dynamics, ignition, fire spread, combustion, fire origin and cause determination, building fire safety, fire protection systems, risk management, and fire modeling.
- Developing a computational algorithm to predict the fire and smoke flow rates between rooms for the computer fire model WPI/Fire.
- Developing computer software to estimate radiation view factors between surfaces for use in calculating radiant heat transfer.

Bachelor of Science degree in Mechanical Engineering received in May 1993 from Worcester Polytechnic Institute. The degree program included:

- Coursework in heat transfer, thermodynamics, fluid mechanics, chemistry, material science, static and dynamic systems, and material stress analysis.
- Electrical engineering coursework in the Principles of Electrical Engineering and Physics: Electricity and Magnetism.
- Teaching high school students fire science with the intent of generating interest in the field of Fire Protection Engineering.
- Creating a computer fire model to predict the maximum heat release rate of a post-flashover subway car fire to determine if existing subway tunnel ventilation characteristics are adequate for passenger egress and fire suppression capabilities.

### PROFESSIONAL EXPERIENCE

**Haynes Engineering – 2006 to present**

Founder and owner of Haynes Engineering specializing in forensic engineering providing the following services:

- Fire origin and cause investigation
- Examination of potential ignition sources, including electrical heat sources
- Electrical and mechanical product examination and testing

- Suppression and water system failure analysis
- Expert report generation and expert testimony
- Case consultation
- Fire protection system design and building and fire code consultation

**Travelers Insurance - 1999 to 2006**

Senior Forensic Engineer, Engineering Laboratory from July 1999 to December 2006. Responsible for forensic engineering including fire origin and cause investigation, suppression and water system failure analysis, product examination and testing, expert report generation, expert testimony, case consultation, and risk assessment.

- Performed and evaluated hundreds of fire origin and cause investigations.
- Examined thousands of evidence items, including:
  - Electrical and mechanical products, for example:
    - Gas and electric clothes dryers
    - Kitchen appliances such as gas and electric ranges, microwaves, dishwashers, and coffeemakers
    - Extension cords and power strips
    - Electronics such as televisions, DVD players, computers, printers, video games, stereos
    - Furnaces, boilers, and hot water heaters
    - Air conditioners and refrigerators
  - Residential and commercial electrical systems and components, such as:
    - Electrical service entrance cables and equipment
    - Building wiring and busses
    - Wall switches and receptacles
  - Fire protection systems and components such as piping, alarms and sprinkler heads
  - Vehicles including:
    - Electric cars and Golf carts
    - Automobiles
    - Riding lawnmowers
- Reviews of deposition testimony and expert reports for and against Travelers' insureds.
- Provided affidavits, expert reports, and expert testimony.

**Engineering Planning and Management - 1997 to 1999**

Fire Protection Engineer from May 1997 to July 1999. Provided fire protection engineering consultation to US and Canadian nuclear power plants, commercial/residential property owners, and other engineering firms. Fire protection engineering consultation included fire suppression system design, fire hazards assessments, and building/fire code evaluations. Accomplishments included:

- Analysis of fire detection requirements on the refueling floor of the James A. Fitzpatrick Nuclear Power Plant. Extensive fire modeling was utilized to determine combustible storage limitations such that no damage would occur to plant electrical systems and superstructure in the event of a fire.
- Evaluation of the fire barriers at the Millstone Unit 2 Nuclear Power Plant for compliance with federal regulations.
- Performed an extensive Fire Hazards Analysis for Bruce Nuclear Station, Ontario, Canada. This involved determining the potential for fires and the impact these fires would have on plant electrical systems and the ability of the plant operators to maintain the nuclear reactors in a safe state during a fire event.

- Evaluation of the portable smoke ventilation and roof heat/smoke vents at Indian Point 3 Nuclear Station to determine the adequacy of emergency equipment during and after a fire emergency.
- Fire protection system design and analysis for numerous residential and commercial buildings and nuclear facilities.

**P.R. Sherman, Inc. – 1995 to 1997**

Fire Protection Engineer from February 1995 to May 1997. Responsibilities included providing fire protection engineering consultation to architects, commercial and residential property owners, and other engineering firms. Accomplishments included:

- Extensive code research and interpretation of the NFPA National Fire Codes, the model building/fire codes (i.e. BOCA, UBC, SBC), the Americans with Disabilities Act, and various state/local codes, ordinances and amendments throughout the United States and Puerto Rico.
- Compiled summary reports of building and fire code requirements applicable to specific projects for architects.
- Architectural plan reviews for compliance with construction type (height and area), fire barrier, means of egress, and handicapped accessibility requirements.
- Fire protection system design including automatic sprinkler, foam systems, and associated shop drawing reviews for large warehouses, aircraft hangers, tank farms, hospitals, colleges, and office buildings.
- Development of design parameters for smoke control systems in large open areas such as atria.
- Completion of Joint Commission for Accreditation of Healthcare Organizations (JCAHO) Life Safety Code Certifications for several large hospitals which included a comprehensive NFPA Life Safety Code audit of each facility.

**Bytex Corporation – 1990 to 1992**

Manufacturing Engineering Technician from January 1990 to August 1992. Responsible for various aspects of the manufacturing process of large wide and local area network data switches and associated equipment. Accomplishments included:

- Designing and fabricating manufacturing test fixtures for large high technology printed circuit boards.
- Responsible for the creation and updating of Manufacturing Process Documentation utilizing Engineering Change Orders (ECOs) to update Bill of Materials (BOMs) and CAD drawings.
- Solving manufacturing problems with printed circuit board production (surface-mount and through-hole components), product enclosures, and airflow/cooling issues.

**Worcester Polytechnic Institute – 1994**

Fall of 1994 - Teaching assistant for Fire Dynamics at Worcester Polytechnic Institute, the fundamental course in the Master of Science degree program for Fire Protection Engineering. Responsibilities included:

- Reviewing video taped lectures and notes for technical accuracy for the Advanced Distance Learning Network before the material was delivered to students in the field.
- Providing input for the course material to be presented during the live lecture portions of the course.
- Instructing and assisting students as well as being responsible for developing and correcting assignments and exams.

**Western Coventry Volunteer Fire Department – 1983 to 1989**

Volunteer Firefighter for Western Coventry Fire Department for approximately six years. Attended numerous hands-on and technical fire and rescue training seminars including:

4/84 – Junior Firefighter – Qualified to Ride Assigned Apparatus
9/84 – Coventry Hazardous Materials Task Force – 24 Hour First Responder Course in Hazardous Materials Handling
4/87 – State of RI, Division of Fire Safety Awards – Completion of Wildlife Firefighting

## CONTINUING EDUCATION

| | |
|---|---|
| 2006 | Electrical Troubleshooting and Electrical Preventive Maintenance, American Trainco |
| 2004 | Introduction to Fire Dynamics Simulator and Smokeview, Society of Fire Protection Engineers |
| 2004 | Investigating Fires Involving Oil-Fired Furnaces, Connecticut Office of Education and Data Management |
| 2003 | Fire and Materials International Conference and Exhibition, San Francisco, CA |
| 2002 | Fire Investigation Seminar, Travelers Engineering Laboratory |
| 2001 | Investigation of Gas and Electric Appliance Fires, Fire Findings Laboratories |
| 2001 | Investigation of Electrical Fires, Fire Marshal's Certification Program, Connecticut Office of the State Fire Marshal |
| 2000 | National Advanced Fire, Arson, and Explosion Investigation Science and Technology Program, Eastern Kentucky University |
| 1999 | Fire Investigation Seminar, Travelers Engineering Laboratory |
| 1998 | Nelson Firestop Products Training Course, Auburn, MA |
| 1998 | Professional Engineering Review Course, Northeastern University |
| 1998 | New England Fire Sprinkler Technical & Ski Seminar, Sugarloaf, ME |

## PUBLICATIONS AND PRESENTATIONS

- "Development of WPI/Fire 3.0: A Multiroom Model", Worcester Polytechnic Institute, MS Thesis, 1994.
- "Basic Fire Science" presented to Travelers Regional Property Recovery Staff, September 2005.
- "Basic Fire Science" presented to Travelers Regional Property Recovery Staff, September 2006.

## PROFESSIONAL MEMBERSHIPS

- National Fire Protection Association
- Society of Fire Protection Engineers
- National Association of Fire Investigators
- International Association of Arson Investigators

## DEPOSITION AND TRIAL TESTIMONY

- Deposition – Ocean Terrace Condominium Trust v. General Electric Company, Civil Action No. 0510075PB5 in the United States District Court for the District of Massachusetts, August 1, 2006.
- Deposition - Travelers Property Casualty Company of America v. Austin Innovations, Inc.; Powertech and Does 1 through 10 inclusive, Case No. 04CC11269 in the Superior Court of the State of California for the County of Orange, May 3, 2006.
- Deposition - Standard Fire Insurance Co v. Aitoro Appliance Co, ET AL, No. CV 04 0198551 S in the State of Connecticut Superior Court Judicial District of Stamford/Norwalk at Stamford, July 20, 2005 and continued on November 17, 2005.
- Deposition - David Thompson, ET AL v. Whirlpool Corp, ET AL, Civil Action File No. 04-1-7418-42 in the Superior Court of Cobb County in the State of Georgia, June 30, 2005.
- Deposition - Beatrice Minor Personal Rep of the Estate of Thomas R. Simmons v. Robinson Property Management, Inc., ET AL., Civil No 1CA007839 in the Superior Court of the District of Columbia, January 21, 2003.


ST PAUL TRAVELERS

# ENGINEERING LABORATORY

## LABORATORY ORDER NUMBER: 02-06-024

May 15, 2006

| REPORT SUBMITTED TO: | REPORT PREPARED BY: |
|---|---|
| Ronald W. Harmeyer, Esq.<br>Falk Johnson LLC<br>Chase Tower<br>111 East Wisconsin Ave, Suite 1370<br>Milwaukee, WI 53202<br>414-226-2139 | Evan K. Haynes, PE<br>Senior Forensic Specialist<br>Engineering Laboratory<br>90 Lamberton Road<br>Windsor, CT 06095<br>1-800-842-0355 |

**LOSS INFORMATION**

Claim File:       C5N4424

Insured:          Ocean Terrace Condominium Trust
Address:          7 Tozer Road, Beverly, MA
Loss Location:    2 Ocean Ave, Magnolia, MA

Date of Loss:     June 1, 2002

## BACKGROUND

On June 1, 2002 a fire occurred in a condominium complex at the above loss location. As a result of the fire, the entire structure was damaged by fire, water and smoke. The laboratory was notified and assisted investigator Gordon Duquenoy with the investigation into the origin and cause of the fire.

During the investigation, the following evidence was collected and removed from the loss site.

| Item# | Description |
|---|---|
| 1 | Debris from base of A/C unit at severed wires (3A) |
| 2 | Core of A/C unit (3A) |
| 2A | Sample cellulose insulation form condo 3A |
| 3 | A/C metal sleeve & cover from 2F |
| 4 | Section of roof deck |
| 5 | Insulation from 3rd floor ceiling |

CLAIM FILE #C5N4424                                                                May 15, 2006
LAB ORDER #02-06-024

| Item# | Description |
|-------|-------------|
| 6 | A/C unit form condo 2M |
| 7 | A/C metal sleeve from condo 3A |
| 9 | Exemplar A/C unit from condo 1J |
| 10 | Condo 3A panel box (circuit breaker panel) |
| 11 | Condo 3A branch circuit for living room receptacles, light and smoke detector |
| 12 | Cellulose insulation collected by GE |
| 13 | Branch circuit wiring found at sliding door – condo 3A |
| 14 | Branch circuit wiring found on living room floor – condo 3A |
| 15 | Branch circuit wiring found on living room floor – condo 3A |
| 16 | Branch circuit & receptacle found in living room of condo 3A |
| 17 | Remains of partition & receptacle south of sliding door – condo 3A |
| 18 | A/C receptacle & wiring and wood structural members – condo 3A |
| 19 | South portion of sliding door jamb and frame – condo 3A |
| 20 | North portion of sliding door jamb and frame – condo 3A |
| 21 | Structural framing at A/C unit – condo 3A |

## INVESTIGATION

The following documents and information were reviewed as part of this investigation.

1. Duquenoy, Gordon, "Structural Fire Report Origin Determination"
2. Duquenoy, Gordon, "Structural Fire Investigation Report", Case Number 200200238186, Ocean Terrace Condominium Trust, September 17, 2002.
3. Earn, Carl, "Structural Fire Investigation Report", Case Number 200200250498, Nortu Jappah, August 30, 2002.
4. The contents of my file relating to the building construction.
5. DVD of TV News Clips.
6. Deposition of Catherine M. Hull w/exhibits taken on December 19, 2005.
7. Deposition of Mark DiFelice w/exhibits taken on December 19, 2005.
8. Deposition of Firefighter Michael Chipperini w/exhibits taken on December 20, 2005.
9. Deposition of Captain Ralph G. Hobbs w/exhibits taken on December 20, 2005.
10. Deposition of Firefighter Stephen L. Cooney w/exhibit taken on December 20, 2005.
11. Deposition of Fire Chief Barry S. McKay taken on December 20, 2005.
12. Continued deposition of Fire Chief Barry S. McKay w/exhibits taken on January 12, 2006.
13. Deposition of Trooper James M. Welch w/exhibits taken on January 13, 2006.
14. Deposition of Robert Ambrosi taken on January 19, 2006.
15. Deposition of H. D. Moore Vol. I of II w/exhibit taken on January 19, 2006.
16. Deposition of H. D. Moore Vol. II of II w/exhibits taken on January 20, 2006.
17. Deposition of Timothy Little w/exhibits taken on February 28, 2006.
18. Mr. Steven Latassa interview by Kathy Ciman on January 10, 2006.
19. Mr. Brian Richardson interview by Kathy Ciman on January 20, 2006.
20. Defendant General Electric Company's Responses to Plaintiff's First Set of Interrogatories dated September 7, 2005.

CLAIM FILE #C5N4424                                                                May 15, 2006
LAB ORDER #02-06-024

21. Defendant General Electric Company's Response to Plaintiff's First Set of Requests to Produce Documents dated September 7, 2005.
22. Underwriters Laboratory File for the GE Room Air Conditioner, Bates-stamped UL00001 through 01016.
23. General Electric Mini-Manual from Condo 3A A/C Unit, Pub. No. 31-7060, 2/79.
24. General Electric Mini-Manual from Condo 2M A/C Unit, Pub. No. 31-7060, 2/79.
25. Noblin & Associates, LLC, "Exterior Building Renovations Ocean Terrace Condominium", April 22, 1999.
26. *NFPA 921 Guide for Fire and Explosion Investigations*, National Fire Protection Association, Quincy, MA, 2004 Edition.

The following are the major investigative activities that were performed by the laboratory.

- Field examination on June 4 and 5, 2002.
- Field examination on June 11, 2002.
- Analytical Laboratory Submission 02-06-211 of Evidence Item#1 on June 17, 2002.
- Joint laboratory examination on June 27, 2002.
- Field examination on July 2, 2002.
- Joint laboratory examination on November 11, 2002.
- Laboratory examination on March 28, 2003.
- Analytical Laboratory Submission 03-03-514 of Part A of Evidence Item#6 on March 28, 2003.
- Analytical Laboratory Submission 03-03-514 of exemplar clip (Exemp-1) on April 21, 2003.
- Laboratory examination on March 1, 2006.

## OBSERVATIONS

*Building Orientation*

The building is located on the corner of Flume Road and Ocean Avenue in Magnolia, MA. The fire department's orientation will be used with the A side being along Ocean Avenue and the B, C, and D sides being clockwise from the A side (McKay Depo, 12/20/05, p35, L9). The B side faces approximately south and is along Flume Road.

*As-built Construction*

The building was three stories with the first floor on a slab and a mansard roof system that extended down over the exterior of the third floor. The flatter top portion of the roof was a membrane roof system and was hipped with a peak running along the length of the building in the center with ridges running to each corner from the peak. The attic space was approximately four to five feet high in the middle with the edges of the roof meeting the mansard at the top of the third floor.

CLAIM FILE #C5N4424                                                                              May 15, 2006
LAB ORDER #02-06-024

The mansard portion of the roof extended from the top of the third floor down to approximately floor level of the third floor. The third floor windows, decks and air conditioners were built into the mansard. The exterior of the mansard was protected with asphalt shingles. Most of the mansard was sloped away from the building except between the side-by-side decks where the mansard was vertical against the building. Photo 1, taken during the fire, depicts the mansard construction at the decks.

The third floor exterior walls at the mansard were double walls with a concealed space between the mansard roof and the interior walls of the condominiums. The concealed space in the mansard was open to the attic space. Ventilation for the mansard and the roof was provided by louvered vents installed at the bottom of the sloped mansard and vents along the top center ridge of the roof.

The exterior of the building was renovated prior to the fire by Noblin & Associates, LLC as described by Timothy Little in his deposition.

*Building Electrical System*

The three-phase electrical supply to the building entered via underground on the A side of the building at the laundry/electrical room shown in Photo 2. Photo 3 shows the main circuit breaker for the building. Each condominium had a meter and main breaker and the common area loads had one meter and panel.

Each condominium had an electrical distribution sub panel located within each unit. The third floor sub panels were fed up from the second floor into the bottom of the panel. Photo 4 shows the service cable running up into the bottom of the condominium 3A distribution sub panel. Photo 5 shows an overall view of the sub panel. All of the branch circuits ran out the top of the panel except one and were routed through the attic as can be seen in Photo 6 and Photo 7.

Photo 8 shows the overall corner of the condominium 3A living room where the wall mounted air conditioning (A/C) unit was located. The condominium 3A A/C unit was supplied by a dedicated 240-volt 20-amp branch circuit as determined by tracing the circuit from the A/C receptacle to the circuit breaker in the sub panel. The circuit exited the sub panel out the top, traveled through the attic over the kitchen and living room, went down a narrow stud bay between the A/C unit and the sliding door, and to a 240-volt receptacle located under the A/C unit. Photo 9 through Photo 18 show the A/C circuit and receptacle. Note that Exhibit 25, Chief McKay's Handwritten Notes, incorrectly identifies the A/C circuit breaker in the electric sub panel for condominium 3A.

*Condominium 3A A/C Unit*

The condominium 3A A/C unit was visually examined at the scene. The A/C unit consists of two major components, the sleeve and core. The sleeve is installed into the building through the

CLAIM FILE #C5N4424                                                                May 15, 2006
LAB ORDER #02-06-024

wall and the core slides into the sleeve. The core contains all of the electrical components of the A/C unit.

During the visual examination at the scene, a localized hot spot was observed on the exterior of the base of the A/C core. No fire damage had occurred to this area from below the unit as the paint on the metal base was otherwise undamaged and there was no damage to the interior bottom surface of the sleeve in the corresponding location (see Photo 19, Photo 20, and Photo 21). The cause of the localized heat damage in this area was electrical activity inside the A/C unit.

Firefighter Stephen Cooney testified that he unplugged the A/C unit when he removed the unit from the sleeve at the time of the fire (Cooney Depo, p.19, l. 15-19); therefore, the electrical activity in the A/C unit occurred prior to removal.

Photo 22, Photo 23, and Photo 24 are an overview of the condominium 3A A/C unit. The A/C unit has a front and a rear compartment. The front compartment is open to the interior of the condominium and contains the evaporator coils, a fan, and the controls. The rear compartment is open to the exterior of the building and contains the condenser coils, compressor, fan, and fan motor. The compartments are separated by a metal barrier to keep interior air from mixing with exterior air. There are holes through the barrier for pipes, wiring and the fan motor shaft. An adjustable opening is also provided for allowing outside air to mix with the inside air for fresh air in the living space. The rear compartment is fire and heat damaged and the front compartment exposed to condominium 3A is relatively undamaged.

Photo 25 is of the wiring at the top of the compressor for the condominium 3A A/C unit. Two out of the three wires to the compressor are severed. These two wires were marked '1' and '2' and then cut for removal and examination; the severed ends are shown in Photo 26 and Photo 27. Based on my examination and the mini-manual provided with the unit, wire '1' was pink and connected to the 'C' terminal on the compressor through the overload protector and wire '2' was tan and connected to the 'R' terminal on the compressor. The unsevered wire was orange and connected to the 'S' terminal on the compressor.

Photo 28 is of the left side of the condominium 3A A/C unit showing a mass of plastic, debris and the wiring from the compressor and fan motor to the control panel enclosure. Photo 29 is of the mass removed from the A/C unit with one of the compressor wires from the control panel remaining attached to the mass. There are two other wires from the control panel to the compressor, one is severed and the other is intact. The fan motor wires from the control panel are also intact. Photo 30 is of the inside base of the A/C from where the mass was removed.

Photo 31 and Photo 32 are of the wire that remained attached to the mass. The wire attached to the mass was marked '4' and the other severed wire was marked '3'. Both wires were then cut for removal and examination.

CLAIM FILE #C5N4424                                                                 May 15, 2006
LAB ORDER #02-06-024

The severed ends of wires '1', '2', and '3' were compared to the chewed and severed wires in the condominium 2M A/C unit (discussed below). Photo 33, Photo 34, and Photo 35 show the severed wires compared with the chewed and severed pink wire on the 2M A/C unit. The ends of wires '1', '2', and '3' are physically consistent with having been chewed through as in the 2M A/C unit.

Photo 36 is of the A/C control panel wiring compartment with the cover removed. Wire '3' was pink and wire '4' was tan based on tracing the wires back to undamaged insulation within the wiring compartment.

Photo 37, Photo 38, and Photo 39 are of the base of the A/C unit where the localized hot spot is located. The center of the hot spot is located approximately 9-inches from the front and 16.5-inces from the right side of the A/C unit.

The mass and wiring removed from the A/C unit were X-Rayed. Evidence of electrical arcing on the end of wire '4' in the mass was observed in the X-Ray. This evidence consisted of localized melting (i.e., beading) to the copper conductor as a result of electrical arcing. Photo 40, Photo 41, and Photo 42 are of wire '4' after it was removed from the mass. The bead on the end of wire '4' was confirmed by visual examination. The location of the electrical arcing on wire '4' matches up with the localized hot spot on the bottom of the A/C unit. Wire '4' would have to be severed in order for the end of the wire to come into contact with the base of the A/C unit in that location based on the wire routing in the other exemplar A/C units.

Photo 43 is a close-up of the mass of plastic and debris showing unburned botanical materials embedded in the plastic. The botanical materials are consistent with the animal nesting materials found in the condominium 2M A/C unit discussed below.

The main power switch on the condominium 3A A/C unit was determined to be in the off position based on the position of the control shaft as compared to the exemplar units and electrical continuity measurements through the main switch contacts. Based on the electrical wiring diagram provided with the unit and my investigation, with the main switch off, all of the wiring and conductors within the unit will have 120 volts relative to the grounded metal parts of the A/C unit with the exception of the pink wire between terminal P on the main switch and the thermostat. That wire would have 120 volts relative to ground only if the thermostat is warm enough to be electrically closed.

*Condominium 2M Exemplar A/C Unit*

Photo 44 and Photo 45 are of the A/C unit in condominium unit 2M. This unit was found unplugged behind an entertainment center. The front cover was on the unit when found, but was removed prior to Photo 44. The exterior grille was not present as can be seen in Photo 45. Botanical materials were present in the opening between the condenser coils and the sleeve on the left side.

CLAIM FILE #C5N4424                                                                May 15, 2006
LAB ORDER #02-06-024

Photo 46, Photo 47, and Photo 48 are of the condominium 2M A/C sleeve with the core removed. The remains of the two plastic clips on the bottom were present and one metal clip remained at the top. These clips are the fasteners that secured the exterior grille to the sleeve. The clips were removed from the unit at the laboratory on March 28, 2003 as shown in Photo 49. These parts were photographed with a microscope under the direction of Joe Fallows. One of the plastic parts was submitted for FTIR analysis under Laboratory Job Number 03-03-514 on that date. The plastic was identified as nylon.

Photo 50 and Photo 51 are of the condominium 2M A/C core. A large quantity of botanical materials was present throughout the rear compartment of the unit.

Photo 52 shows the pink, orange, and tan wires. All three wires have numerous localized gouges in the insulation and broken copper strands; pink and orange are severed and the tan is almost severed. Photo 53 is a close-up of the severed ends of the pink and orange wires. Based on the presence of the botanical materials and the type of damage to the wires and insulation, the botanical materials were introduced by rodents and the wires were chewed by rodents.

To evaluate the flammability of components of the A/C unit, two samples of plastic were removed; one from the fan blade and one from the plenum. Both pieces readily ignited with a lighter and continued to burn until manually extinguished. Photo 54 and Photo 55 are of the samples of plastic burning.

Photo 56 is of the base of the condominium 2M A/C core as a comparison to the condominium 3A A/C core.

*Condominium 1J Exemplar A/C Unit*

Photo 57 is of the Condominium 1J A/C in place with the front cover removed. This A/C was found plugged in.

Photo 58 through Photo 62 are of the interior of the A/C sleeve. The two screws for the plastic clips can be seen at the bottom. Note that neither of the two metal clips at the top was present.

Photo 63, Photo 64, and Photo 65 are of the exterior of the A/C showing the remains of the plastic clips.

Photo 66 through Photo 72 are of the compressor and fan motor wiring in the rear compartment of the condominium 1J A/C unit. The compressor wiring (pink, tan and orange) exits the control panel enclosure, is routed under the fan motor and then up to the top of the compressor on the other side of the A/C unit.

Without the exterior grill in place, the width of the opening between the sleeve and condenser on the left side measures approximately 4-1/4"; large enough that I could reach into the A/C unit and touch the edge of the fan opening.

CLAIM FILE #C5N4424                                                                                May 15, 2006
LAB ORDER #02-06-024

*Nortu Jappah Loss*

On July 3, 2002 at 2:30PM at a Vernon, CT apartment building, a neighbor observed smoke from an A/C unit. Nortu Jappah was the occupant and was not home at the time of the fire as they had left for a trip four or five days prior. As can be seen in Photo 73 through Photo 76, the fire involved only the A/C unit and the structure immediately around the sleeve. The sleeve was installed in a typical exterior wall and had framing on all sides of the sleeve. There were no concealed spaces for the fire to spread in such as at Ocean Terrace. The framing around the sleeve was charred from heat generated within the A/C unit.

A joint exam of this A/C unit was performed with General Electric representatives on November 11, 2002. Botanical materials consistent with nesting materials were present in the rear compartment (see Photo 77). The power switch was found to be in the 'ON' position and evidence of electrical arcing consisting of localized beads of copper was observed in the motor stator windings. The stator is shown in Photo 78 and a close-up of the localized copper beads is shown in Photo 79.

The only ignition source for this fire was electrical arcing in the motor stator windings and the ejected molten metal from that event. This case demonstrates that a fire in a General Electric A/C unit can transfer enough heat through the metal sleeve to the building structure surrounding the A/C unit to spread the fire.

## OPINIONS

I have reached the following opinions to a reasonable degree of certainty based upon extensive review as set forth in this report, my file material, and my education, experience and training.

1. I have studied Mr. Gordon Duquenoy's opinions regarding the origin of this fire, his bases for those opinions, and performed examinations of the fire scene and evidence. I concur with his opinions based on the eye witnesses, electrical arc evidence, fire dynamics, and fire patterns.
2. All potential ignition sources in the condominium 3A air conditioner, the area of origin, were identified via detailed examination of the subject air conditioner and the exemplar air conditioners. The only failure and competent ignition source in that origin was the electrical activity that occurred at the base of the air conditioner.
3. The electrical activity is located at the inside surface of the base of the condominium 3A air conditioning unit between the end of the tan wire (marked Wire '4') from the control panel and the metal base of the air conditioner.
4. The electrical activity was due to a ground fault resulting from the damage to the tan wire (marked Wire '4') and it's insulation by rodents prior to the fire based on the wire having to be severed in order to come into contact with the base of the unit, evidence of nesting materials, witness statements, and the rodent damage to the other severed wires within the condominium 3A air conditioner.

CLAIM FILE #C5N4424  May 15, 2006
LAB ORDER #02-06-024

5. The electrical activity located in the base of the condominium 3A air conditioner was not caused by fire exposure, but was in fact was the cause of this fire based on the area of origin of the fire, the lack of fire exposure from below the air conditioner, and the air conditioner having been unplugged and removed by the fire department.
6. Nesting materials were present in the condominium 3A air conditioner at the time of the fire based on the presence of unburned botanical materials found in the air conditioner during detailed examination.
7. The first fuel ignited was nesting materials introduced by rodents based on the electrical activity occurring at the base of the unit where the nesting materials would have collected as observed in exemplar air conditioner from condominium 2M.
8. The fire was able to grow and spread from the nesting materials to the plastic components of the A/C unit based on the plastic materials being readily ignitable and able to continue to burn without an external heat source.
9. The fire was able to grow and spread from the core of the air conditioner, through the sheet metal of the sleeve, to ignite the building materials within the concealed space of the building based on heat being readily transferable through a single layer of sheet metal to building materials in direct contact with the outside of the sleeve and the damage to the surrounding building materials as demonstrated in the Nortu Jappah General Electric air conditioner fire.

_____

Evan K. Haynes, PE
Senior Forensic Specialist