UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 10075 PBS

OCEAN TERRACE CONDOMINIUM
TRUST,

vs.

GENERAL ELECTRIC COMPANY

## DEFENDANT GENERAL ELECTRIC COMPANY'S OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant General Electric Company ("GE") respectfully objects to the Report and Recommendation regarding Defendant General Electric Company's Motion for Summary Judgment (hereinafter "Report") as follows:

1)    GE objects to the statement of page 6 of the Report which states that Mr. Little "decided not to replace all of the flashing (Docket #92, Ex. 20, p. 60)". The exhibit referred to does not support the statement. Mr. Little's testimony at Ex. 20, p. 60 states that he decided not to replace "some pans" namely wall sleeves. His testimony affirmatively establishes that "new flashing" was to be installed around existing pans. This testimony is relevant and

material because the installation of new flashing around the wall sleeve in issue not only involves the removal of the old flashing but the physical task of bending flashing and attaching it to the structure immediately adjacent to the wall sleeve and fasteners in issue provides an explanation for damage to the fasteners missing before the loss in issue.

2)    On page 8 of the Report, the source of almost all of the statements concerning the nylon grommets is an unsigned and unverified report of Plaintiff's expert Joseph Fallows which Plaintiff submitted as Ex. 8.  This report does not meet the criteria of Fed. R. Civ. P. Rule 56 for materials which may be considered in opposition to a motion for summary judgment.  GE objects to the use of any information in Plaintiff's Ex. 8 in opposition to the motion for summary judgment.

3)    On page 8 of the Report, the statement is made that these "grommets [referring to grommets for condominium units 1J and 2M] are identical to those depicted in GE's part drawing number 864C709 dated June 24, 1960 . . ."  The source of this information is attributed to Plaintiff's Ex. 9 pp. 223-224.  The only drawing referred to on these pages was a drawing of the grommet "currently" used by GE.  The drawing referenced in the Report, 864C709, was not submitted as an Exhibit by Plaintiff in any form, and certainly not in any verified or properly authenticated form.  In

2

fact, drawing 864C709 is not a part drawing for a grommet. Said drawing references "grommets" generally but contains no information about the grommets referenced which would permit a comparison with any other document or object. GE objects to the inclusion in the Report of this material which is not properly supported by the record in accordance with Rule 56.

4)     The discussion in the Report, at page 11, of alternative means of grille attachment is irrelevant in the absence, at a minimum of admissible testimony that the alternative means would outlast the means selected by GE. Not only do Plaintiff's experts Joseph Fallows and Scott Jones fail to provide such testimony but the record affirmatively establishes that they cannot provide such testimony GE objects to the consideration by this court of assertions of the mere existence of alternative attachment methods in the absence of admissible evidence that, at a minimum, such alternative attachment methods would out perform the method selected by GE. GE again objects to the use of the unsigned and unverified Plaintiff's Ex. 8 as a basis for the discussion on page 11 of the Report.

5)     At page 14 of the Report the statement appears, "GE disputes this, pointing to Fallows' testimony that one function of a grille is to protect internal wires from the known risk of rodents (Docket entry #50, Ex. 8, pp. 6-7). First, GE believes there is a typo in this

3

statement and "GE" should be replaced with "plaintiff." Second, GE
again objects to the use of the unsigned, unverified Ex. 8. Third,
the content of Ex. 8 does not establish any recognition by
manufacturers or designers of air conditioners before 1985 that a
function of rear grilles on air conditioning units was to keep rodents
out. The references contained in Ex. 8 pp. 6-7 are from 1990 to
2006 and relate to underground cables, and railroad and traffic
signals, not to air conditioners.

6) The reference to an alleged "Nortu Jappah" air conditioner fire on
page 15 of the Report is based on an unsigned, unverified "report"
of Evan Haynes which does not meet the requirements of Fed. R.
Civ. P. Rule 56. The description and analysis of the fire is based at
least in part on inadmissible hearsay. The fire happened after the
fire in issue and the cause of the fire was attributed to arcing inside
a motor, not to rodent activity. Consideration of the alleged "Nortu
Jappah" fire has no relevance to the issues before the court.

7) The Report, page 16, references an opinion of Scott Jones for the
use of "double pole contactors" to provide a double line break in the
refrigeration power circuit. This is an inadmissible ipse dixit opinion
in view of Jones admissions that he knew of no air conditioner
manufacturer that ever used such a design, any industry standard
that required the use of such a design, any other person who had
expressed an opinion on the subject and no scientific literature

4

advocating such a design.  (See: Report, page 17)  <u>Daubert v.</u>
<u>Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786,
125 L. Ed. 2d. (1993); <u>Kumho Tire Company, Ltd. v. Carmichael</u>,
526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d. 238 (1999).

The record does affirmatively establish that the air
conditioner unit in issue was listed by Underwriter's Laboratory (GE
Ex. 17, pp. 83-89)

8)    GE objects to the conclusion in the Report, at page 19, that the
Plaintiff has sufficient evidence to sustain its burden of proving that
the hardware, which disappeared along with the grille 9 months
before the fire, was sold by GE and sold in a defective condition.
The Report states two bases for its conclusion that there is a triable
issue on this point.  First, it refers to testimony of Fallows that on
the wall sleeve in issue there were shadow marks "consistent" with
the dimensions of a pre-1975 GE grommet.  At best this contention
may warrant an inference that for some time during its 31 year life
there was an object with at least one dimension of the same size as
the pre-1975 grommet used by GE in contact with wall sleeve.  The
shadow marks provide no information about the material of the
object or any of its other dimensions and the shadow marks provide
no information about what was present at the time the grille
disappeared.  The second basis relied on in the Report is that Hull
saw "plasticy" screws holding the grille in place.  With respect to the

plastic screws which were the subject of Hull's testimony she repeatedly stated that they had threads like a screw. (GE Ex. 12, pp. 48-50) A screw is the opposite of a grommet. A screw has threads on the outside. A grommet has threads on the inside! There is no reasonable basis for a jury to infer that what was described as a screw was in fact the opposite!

Inferences must be reasonable. They must be based on probability rather than possibility and may not be the result of speculation or guess work. Alholm v. Wareham, 371 Mass. 621, 627, 358 NE2d 788 (1976); Poirier v. Plymouth, 374 Mass. 20b, 212, 372 NE2d 212 (1978). Ferragamo v. Mass Bay Transportation Authority, 395 Mass. 581, 481 NE2d 477 (1985).

At best a jury could only speculate what fasteners were present when the rear grille disappeared and can only speculate whether any such fasteners were in a condition for which GE had any responsibility. Summary Judgment should enter for GE under such circumstances.

9)    GE objects to the conclusion of the Report, at page 20, that a jury might reasonably infer that the failure of missing grommets, assumed to be supplied by GE, was due to unspecified degradation due to UV radiation resembling the post-fire condition of grommets in units 1J and 2M. This proposition involves pure speculation. The undisputed evidence submitted by GE established:

a.    The condition of any grommets for the wall sleeve in unit 3A at the time of installation in the late 60's or 1971 is unknown.  (Ex. 3, pp. 18-21; Ex. 22, pp. 47-50)  Whether the assumed grommets were damaged or the screws were overtorqued is unknown.

b.    There was substantial construction work around the wall sleeve for Unit 3A in 1999 involving the removal of shingles and flashing.  (Ex. 8, pp. 30, 38-42)  This work had resulted in known damage to at least one air conditioner grille (Ex. 8, p. 133) Whether the assumed grommets were damaged in this or other activities in the 31 years of their assumed use is unknown and cannot be ruled out.

c.    Plaintiff's expert Fallows has admitted that he had no knowledge or evidence of whether any assumed grommets were physically or chemically abused and that he could not rule out such abuse or improper installation as possible causes for any hardware becoming missing (Ex. 22, p. 60-61)

d.    Fallows admitted there was no other case in which he has provided on opinion about the failure of something he never saw! (Ex. 22, p. 62)  Fallows admitted that he was not aware of any scientific standard that would permit someone to reach a determination as to the cause of a failure of something that is not in existence or visible.  (Ex. 22, p. 62)

e.    The statements of Plaintiff's expert Fallows, relied upon in

7

the Report, of degradation of nylon grommets are meaningless in the absence of data showing an effect on the performance of a grommet in the particular application in issue. Essentially all materials degrade. In the building in issue every material around the wall sleeve in issue (the roof, the sheathing, the shingles, the flashing and other outside ducts) had degraded to the point where they were actually replaced.

The mere existence of degradation of strength does not establish a product defect or a cause for a missing grille. Fallows has admitted that he does not know the necessary tensile strength for the application in issue. By way of example if the tensile strength of the assumed grommets when new degraded by 50% but if only 5% of the tensile strength was needed for the application the degradation is meaningless.

The cause of the assumed grommets becoming missing is entirely unknown. The Plaintiff is not entitled to meet its burden of proof through the speculation of a hired expert who never even saw the assumed grommets, who is not following any scientific method and who admits that multiple other causes cannot be ruled out. Those causes include misinstallation, post-sale damage to either the screw or grommet, chemical attack to the screw or grommet or a loose screw. At best Plaintiff can show a mere possibility based

on speculation of some degradation of a grommet which may have
played a role in the grille becoming missing.

10)    GE objects to the conclusion in the Report, on page 24, and the
analysis preceding that conclusion "that damage to the air
conditioner was foreseeable and consequently, GE owed a duty to
Ocean Terrace." This statement is factually and legally incorrect for
the following reasons:

a.    The analysis of either negligence or breach of warranty with
respect to product design must relate to the time the design was
adopted. Back v. The Wickes Corp., 375 Mass. 633, 278 N.E. 2d.
964 (1978); Ward v. Hobart Manufacturing Co., 450 F.2d 1176,
1183 n. 16 (5th Cir. 1971).

Here, the wall sleeve and rear grille were made at least 31
years before the time in issue and the air conditioner unit was made
17 years before the fire. The Plaintiff has produced no evidence
that, at either time, an event of even the general nature of the event
in issue was reasonably foreseeable.

There is no evidence of the occurrence of any rodent
damage to an air conditioner prior to the design of either the wall
sleeve or air conditioner. Indeed the first known occurrence of
alleged rodent damage to an air conditioner is the incident in issue.

The Report relies on the statement of Fallows "that the
danger of rodents chewing electrical wires was widely known." This

9

conclusion is derived from the unsigned and unverified Report of Joseph W. Fallows, Plaintiff's Ex. 8, p. 6 where Mr. Fallows states, "It is commonly understood by product designers across a wide range of markets that rodents will chew on wiring insulation. If rodents are allowed to enter areas with electrical wiring the product is often rendered non-functional and in many scenarios a dangerous situation results. The degree to which this understanding is wide spread can be displayed by various bulletins and publications from a variety of markets." Mr. Fallows then cites a 1990 study of underground electric cables, a 2004 or later study of railroad signals, a 1997 study of rodents nesting in electrical equipment, a 2000 Canadian study of rodent control in horse stables, a 2006 NASA study, an undated study of traffic signals and an undated marketing brochure for fiber optic cables.

There is no evidence in the record before this court that an accident of the nature in issue was even remotely possible never mind reasonably foreseeable at the time of the relevant dates of manufacture.

None of this data existed prior to the manufacture of either the wall sleeve or the air conditioner. None of this data pertains to air conditioners. The Plaintiff has not provided any evidence of pre-manufacture knowledge of anyone of rodent damage to wiring in air conditioners.

There is no evidence in the record before this court that an accident of the nature in issue was even remotely possible never mind reasonably foreseeable at the time of the relevant dates of manufacture.

b.     GE objects to the statement of the report that GE's expert Moore testified that "the danger of small birds getting into the air conditioner was factored into the grille design but that squirrels were not considered." The relevant testimony of Mr. Moore appears at Plaintiff's Ex. 12, p. 81. He said nothing about birds presenting a "danger" under any circumstances.

c.     The Report again references, at p. 23, a contention of Plaintiff that double pole contactors could have been used to prevent the assumed and extremely remote danger of a squirrel entering an air conditioner if a grille falls off and the assumed possibility of a fire as a result. GE incorporates by reference its prior objection above in Paragraph 7 with respect to the admissibility of this contention. There is no evidence in the record to establish that at the time of manufacture any reasonable designer or manufacturer of an air conditioner would have used a double pole contactor.[1] The evidence affirmatively establishes that no known manufacturer of an air conditioner has used such a device.

d.     The statement, "the damage to the air conditioner was foreseeable, and consequently, GE owed a duty to Ocean Terrace" is not legally correct because the danger must be <u>reasonably</u> foreseeable. The Plaintiff has no evidence that it was.

---

[1] As GE understands this contention a double pole contactor would serve as an extra on-off switch. Pulling the plug out of the wall serves the same function. Once the double pole contactor is placed in the "on" position, arcing can occur.

11

The report fails to take into account GE's argument that it had no duty to design a wall sleeve and rear grille to last for more than 31 years. Plaintiff's expert Fallows initially said the wall sleeve and grille should last for 15 years. (GE Ex. 22, p. 53) After he read the disclosure of the defense experts he changed his opinion to the wall sleeve should last longer than the air conditioner but he could not say how long. (GE Ex. 22, p. 56) Plaintiff's expert Jones had no information on the expected useful life of the air conditioner or wall sleeve. (GE Ex. 23, pp. 73, 76) The life expectancy of the air conditioner was 15 years (GE Ex. 17, pp. 67-68) Mr. Little, the engineer supervising the 1999 construction, recommended the replacement of the wall sleeves (Ex. 8, p. 134).

The wall sleeve in issue performed as anticipated for more than 30 years and more than twice the span of time of the useful life of the air conditioners it was used with. There is no standard or other basis upon which a jury could conclude that GE should reasonably foresee that a product, such as a wall sleeve; made by it should be designed to last more than twice the useful life of the product it was used with. Such a contention places an unreasonable standard of perfection on a manufacturer and is not a rational rule of law.

Furthermore, both Plaintiff's experts Fallows and Jones agreed that the condo unit owner should have replaced the rear

12

grille (GE Ex. 22, p. 145; GE Ex. 23, p. 122)  The condo unit owner knew the grille was missing for 9 months.  They did nothing to obtain a replacement grille.

It was not reasonably foreseeable to GE that it should undertake design duties to make a product which would last more than twice the useful life of the air conditioner it was used with and that after 31 years of use an owner would not make a reasonable repair.

The Plaintiff produced no evidence that GE had any duty to design its wall sleeve, and rear grille and attaching hardware for more than 31 years!

11)    GE objects to the conclusion in the report at p. 24-25, that the Plaintiff sustained its burden of showing the existence of a feasible safer alternative design.  The report correctly states the law that the alternative design must be <u>safer</u> but there is no admissible evidence of a safer design.  With respect to the hardware for the grille, the record before this court specifically establishes that Plaintiff's experts had no opinion or evidence that the hardware alternatives they say existed for the rear grille would have lasted longer than the grommets and screw used by GE.  In the absence of such evidence the proposed alternative designs cannot be viewed as safer.

GE again notes that the report appears to contain a typo at

the end of the first paragraph of p. 25. "GE" should be "the plaintiff."

The report again refers to double pole contactors at p. 25. GE incorporates by reference its earlier objections to Mr. Jones ipse dixit thought about double pole contactors. Furthermore, a double pole contactor will not prevent an arc if one is to occur. If an arcing condition exists the arc will occur as soon as the double pole contactor is placed in the "on" position. A circuit breaker was the electrical device used to address arcs (Ex. 18, pp. 17-18).

The Plaintiff did not and cannot satisfy its burden of proving the existence of safer alternative feasible designs which existed at the time of manufacture, and summary judgment should enter for GE.

12) GE objects to the conclusion of the report at p. 26 and 27 that the Plaintiff has evidence which would support the existence of a duty to warn by GE.

"The duty to warn assumes some reason to suppose a warning is needed, Carney v. Bereault, 348 Mass. 502, 506, 204 N.E.2d 448 (1965); Haley v. Allied Chem. Corp., 353 Mass. 325, 330, 231 N.E.2d 549 (1967); McNeill v. American Cyanamid Company, 3 Mass. App. 738, 326 N.E.2d 366 (1975).

The duty to warn is not imposed by law as a mindless ritual. Killeen v. Harmon Grain Products, Inc., 11 Mass. App. Ct. 20, 413

N.E.2d 767 (1980).

In circumstances where a warning would not reduce the likelihood of injury, no duty to warn is imposed. Colter v. Barber-Green Company, 403 Mass. 50, 525 N.E.2d 1305 (1988); Uloth v. City Tank Corporation, 376 Mass. 874, 384 N.E.2d 1188 (1978).

The Plaintiff has never stated what the warning is that GE supposedly should have provided, where it should appear or how it would come to the attention of someone 31 years after the manufacture of the wall sleeve and 17 years after the manufacture of the air conditioner. The Plaintiffs have no disclosed expert testimony about such matters.

The Plaintiff has failed to produce any evidence of any latent danger known by GE prior to the manufacture of the wall sleeve or air conditioner. The Plaintiff has failed to produce any evidence of facts about which GE should have known before 1985 which would give rise to any duty to warn.

Indeed the first and only "dangerous" occurrence which Plaintiff can point to involving the wall sleeve or air conditioner in issue is the fire in issue which GE, the State Fire Marshall, and GE's expert do not attribute to the air conditioner. There is no evidence that GE knew or should have known of any reason to provide a warning about grilles falling off or rodent activity prior to the time of any sale or the fire.

The report refers at p. 27 to other grilles missing at the Ocean Terrace building. GE believes the only evidence in the record relating to missing grilles before the fire is in GE Ex. 5, p. 45 and GE Ex. 6. There is no evidence that the two grilles referred to were GE grilles or that the grilles were missing for any reason attributable to GE. Indeed the 11/10/2000 letter to Thomas Brancaleone (GE Ex. 6) strongly suggests a mismatched air conditioner and sleeve not attributable to GE. Both missing grilles were noted in late 2000 and <u>no one observed or commented on any danger</u>. There is no evidence that GE knew or should have known that these grilles were missing and nothing about this evidence remotely creates a post-sale duty to warn.

GE has affirmatively established that it monitored field quality complaints and that there were no known complaints about grilles falling off. (GE Ex. 17, pp. 5-9, 20-22, 27, 71-72; GE Ex. 20 pp. 6, 24-25, 36).

The post-fire, post-lawsuit complaints of Plaintiff's experts about nylon grommets which have not been made by any other person before or after the fire cannot create a duty to warn.

In the absence of evidence of some fact about a latent, non-obvious danger which GE knew or should have known before the time of any sale of the products in issue it had no duty to warn. There is no such evidence.

16

In the absence of evidence of post-sale knowledge of GE of a discovered defect which existed at the time of any sale there is no post-sale duty to warn.  There is no evidence of any such defect or any such knowledge.  Furthermore, a post-sale duty to warn extends to the original purchaser as the Report observes.  The condo unit owner was not the original purchaser of either the wall sleeve or the air conditioner.

There is no evidence to support any failure to warn theory and summary judgment should enter for GE on this issue.

GE respectfully requests that the Report and Recommendation not be adopted and that summary judgment enter for GE for the foregoing reasons and for the reasons set forth in GE's original summary judgment submissions which are incorporated herein by reference.

Respectfully submitted,

CURLEY & CURLEY, P.C.

Robert A. Curley, Jr., Esq.
BBO# 109180
27 School Street, 6th Floor
Boston, MA  02108
(617) 523-2990

Dated:

## CERTIFICATE OF SERVICE

I, Robert A. Curley, Jr., Esq., hereby certify that I served a true copy of the foregoing pleading by mailing a copy postage prepaid to the following counsel of record:

Paul T. Falk, Esq.
Falk Johnson LLC
20 South Clark Street
Suite 1990
Chicago, IL   60603

Steven B. Stein, Esq.
Law Offices of Thomas M. Niarchos
100 Summer Street, Suite 201
Boston, MA    02110

Ronald W. Harmeyer, Esq.
Falk Johnson, LLC
Bank One Plaza
111 East Wisconsin Avenue
Suite 1370
Milwaukee, WI    53202

Dated: 8/23/07

Robert A. Curley, Jr., Esq.