UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NUMBER: 05 10075 PBS

| | |
|---|---|
| OCEAN TERRACE CONDOMINIUM TRUST, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| GENERAL ELECTRIC COMPANY | ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MOTION IN LIMINE TO BAR ANY AND ALL REFERENCE OF COLLATERAL SOURCE PAYMENTS MADE BY TRAVELERS TO OCEAN TERRACE AND TO BAR ANY AND ALL REFERENCE TO TRAVELERS AT TRIAL**

Now come the Plaintiff, Ocean Terrace Condominium Trust, by and through its attorneys, and moves this honorable Court to enter an order in limine barring any and all reference, testimony, argument, inference, innuendo of any kind that Ocean Terrace has received payments from Travelers Indemnity Company of America compensating it for losses incurred in the subject fire and also to bar any and all reference to Travelers Indemnity Company of America, Travelers Insurance Company or any other like reference as any such remark of this kind would constitute a violation of the collateral source rule and cause substantial and material prejudice to Plaintiff without any probative value. In support of said motion Plaintiff states as follows:

At the time of the subject fire, Plaintiff Ocean Terrace was covered under a policy of insurance issued by Travelers Indemnity Company of America for certain losses suffered by it in the subject fire. As is normally the case, Ocean Terrace as part of its

insurance contract with Travelers did pay "out of pocket" negotiated premiums for such coverage. Pursuant to this policy of insurance, Travelers stands as subrogee of Ocean Terrace and is entitled to reimbursement pursuant to the policy for payments it made to Ocean Terrace in fulfillment of the insurance contract and which are recovered by Ocean Terrace from the tortfeasor primarily responsible. The payments made by Travelers to Ocean Terrace arising out of this loss constitute collateral source payments and are thus inadmissible.

Evidence that a plaintiff was insured with respect to an alleged loss for which it seeks a recovery against the defendant is normally excluded. The "collateral source rule" is based on the concern that "jurors might be led by the irrelevancy (of insurance coverage) to consider the plaintiff's claims unimportant or trivial or to refuse plaintiff's verdicts or reduce them, believing that otherwise there would be unjust double recovery." *Goldstein v. Gontarz*, 364 Mass. 800, 809, 309 N.E.2d 196 (1974). This principle is particularly applicable in subrogation cases given that the jury, upon hearing that the plaintiff has already been reimbursed for its losses, may ignore, or even be unaware, that an insurer is legitimately attempting to recover its outlay of funds from the party that it deems ultimately responsible for the loss. Likewise, the court should be reluctant to inform the jury that a Defendant is insured with respect to a Plaintiff's claim. "Exposing juries to such information is condemned because it is not itself probative of any relevant proposition and is taken to lead to undeserved verdicts for plaintiffs and exaggerated awards which jurors will readily load on faceless insurance companies supposedly paid for taking the risk. *Id*. at 808, 309 N.E.2d 196.

The collateral source rule also prohibits reduction of Plaintiff's damages by sums the plaintiff has received from another collateral source. It has been said that the weight

of authority is conclusive to the effect that a defendant owes to the injured compensation for injuries, the proximate cause of which was his own negligence, and that the payment by a third party cannot relieve them from this obligation; that regardless of the motive impelling their payment, whether from affection, philanthropy or contract, that the injured is the beneficiary of the bounty, and not the defendant who caused the injury. *Clark v. Berry Seed Company* 280 N.W. 505, 510 (Iowa 1938).

The importance of barring reference to collateral source matters is even greater in those situations in which the injured party is obligated to reimburse the third party which made the collateral payments. This is because of the real danger that the injured party would be subject to a double reduction, one caused by the jury and the second by the reimbursement obligation.

Arrayed against whatever limited, if any, probative value the evidence of insurance may have is the undoubted prejudicial effect of the information on the Plaintiff's case. Allowing reference to the fact that Ocean Terrace was insured or received any payments would only serve to trivialize Plaintiff's case before the jury or otherwise lead the jury to believe that an award in Plaintiff's favor would lead to unjust double recovery. As the existence of the insurance payments has no probative value, the reference to such or the fact that Ocean Terrace was insured would only serve to prejudice the Plaintiff unfairly. Therefore any and all reference to the fact that Ocean Terrace was insured or received any insurance payments resulting from this loss should be barred for any and all purposes.

Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover through two sources, one of which there is a primary legal responsibility. If a secondary source (the subrogee) pays the obligation, it succeeds

to the rights of the party that has paid (the creditor or loss victim, called the subrogor) against the third, primarily responsible party. *Frost v. Porter Leasing Corporation*, 386 Mass. 425, 426-27, 436 N.E.2d 387, 388-89 (Mass. 1982). The doctrine of subrogation applies to payments under policies of insurance. Upon payment, the insurer is entitled to share the benefits of any rights or recovery the insured may have against the tortfeasor for the same loss covered by the insurance. *Id.* If the insured recovers from the tortfeasor, the insurer's right becomes a right to the proceeds in the hands of the insured. *Id.* Subrogation is based on strong public policy. Subrogation returns any excess to the insurer, who then can recycle it in the form of lower insurance costs. *Id.* at 428, 436 N.E.2d at 389.

Further, no mention should be made at all during the trial of Travelers as such has no probative value on any legitimate issue to be decided by the jury. Massachusetts Rule of Civil Procedure 17(a) states in no uncertain terms that an insurer who has paid all or part of a loss may sue in the name of the assured to whose rights it is subrogated. At Massachusetts common law, the subrogee's rights were considered equitable in nature, entitling him to bring the action only in the insured's name. See *Grey v. United States*, 77F. Supp. 869 (D.Mass. 1948), reversed on other grounds, 172 F.2d 737 (1st Circuit 1949). When the Massachusetts common law, Massachusetts Rule of Procedure 17 and the Massachusetts Supreme Judicial Court's rulings are construed together it is clear that the insurer is merely entitled to share the benefit of any rights of recovery the insured has against the tortfeasor for the same loss covered by the insurance. If the insured recovers from the tortfeasor, the insurer's right becomes the right to the proceeds in the hands of the insured. Therefore, it is clear that the proper party in this matter is Ocean Terrace and that Travelers really has a right to the proceeds that would ultimately lay in the hands of

Ocean Terrace. With this in mind, it is extremely important to bar any reference to Travelers in this lawsuit as such would only serve to prejudice Plaintiff's case without any probative value. The intent behind Rule 17 mentioned above is clear as it pertains to the subrogation exception to the general rule that actions must be brought in the name of the real party in interest. The danger of extreme prejudice in allowing a jury to learn of that an insurance company may be bringing an action in subrogation or a de facto participant in the action is too great and has no probative value as to any legitimate issue to be decided.

To the extent that any argument can be made that any witness' credibility may be attacked on grounds of bias in favor of Travelers due to any contractual or employment relationship, such potential prejudice can be alleviated by referring to any such witness as being retained or hired by Ocean Terrace as Ocean Terrace is the real party in interest. This would allow any potential defense on the issue of bias to be levied against the named party plaintiff, yet avoiding potential problems referring to an insurance company which the collateral source rule and Rule 17 are designed to eliminate.

WHEREFORE, Plaintiff respectfully requests that this honorable court enter an order in limine barring any testimony, evidence, reference, argument, innuendo of any kind from any and all witnesses and counsel regarding Ocean Terrace being insured for this loss and any collateral source payments that has received or may likely receive in the future and any reference to Travelers at all during the course of this litigation and for any other relief this court deems just and necessary in the premises.

Respectfully submitted
By its Attorneys,

**FALK METZ LLC**

_____
Paul T. Falk
20 South Clark Street, Suite 1900
Chicago IL 60603
(312) 922-5800


Steven B. Stein, Esq.
Law Offices of Thomas M. Niarchos
100 Summer Street, Suite 201
Boston, MA 02110
(617) 772-2800


Dated: November 9, 2007

## CERTIFICATE OF SERVICE

I, Paul T. Falk, hereby certify that on November 9th, 2007, I served a true copy of the foregoing pleading by mailing a copy postage prepaid to the following counsel of record:

Robert A. Curley, Esq.
CURLEY & CURLEY P.C.
27 School Street
Boston, MA 02108
BBO #109180

Steven B. Stein, Esq.
Law Offices of Thomas M. Niarchos
100 Summer Street, Suite 201
Boston, MA 02110

Dated: November 9, 2007            _____
                                    Paul T. Falk

- 7 -