UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 10075 PBS

OCEAN TERRACE CONDOMINIUM
TRUST,                              Plaintiffs

vs.

GENERAL ELECTRIC COMPANY
                                    Defendant

## OPPOSITION OF DEFENDANT GENERAL ELECTRIC COMPANY TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY OF GENERAL ELECTRIC'S EXPERT WITNESSES

The Plaintiff seeks limitations on evidence about: 1) what Plaintiff calls the "grommets in question" and the supposed "grommets" composition of nylon; 2) the rear screen or grille; and 3) the cause of the rear grille and fasteners for Unit 3A becoming missing in the Fall of 2001. General Electric Company ("GE") will address each of these subjects separately.

A. **There is no evidence of "grommets in question" or their composition**

The only evidence of the fasteners involved with holding the rear grille for the wall sleeve in Unit 3A was provided by the occupants Unit 3A, namely, Mark DeFelice and Catherine Hull. Neither Mark DeFelice nor Catherine Hull described

the presence of any grommet. Mr. DeFelice described metal screws going from outside-in and Ms. Hull described plastic screws going from outside-in.

Whatever fasteners were present before the rear grille fell off were not retained. They were never available for inspection by anyone. The configuration or composition of the fasteners could never be observed or tested by any expert. There is no evidence from any source of the supplier of the fasteners present before the grille fell off, of the date of the supply, of the manner of installation, or of the history of the fasteners after installation. The absence of such evidence will be the subject of testimony from multiple fact witnesses before the fire. Indeed each of the Plaintiff's experts has admitted the fact of the missing fasteners and of their inability to observe or test any such fasteners.

Fed. R. Evid. Rule 703 permits experts to testify about the facts or data on which an expert bases an opinion.

Each of GE's experts is entitled to testify that they sought to observe, inspect and test the fasteners for the rear grille of Unit 3A and that they were non-existent. They could conduct no test to verify the identity of the material of the non-existent fastener. Each of GE's experts is entitled to testify that they reviewed the only known descriptions of the fasteners available for the rear grille (which testimony is expected to be in evidence before any expert testimony), that they observed the physical evidence, that they examined design drawings and that the fasteners described by the witnesses are different from any fastener ever supplied by GE.

The identity of the supplier of the fasteners is part of Plaintiff's prima facie case. Testimony about this issue is relevant and should be heard by the jury.

B.  **The testimony about the rear grille from Mark DeFelice is a proper subject of expert testimony**

Mark DeFelice described the rear grille for the wall sleeve in Unit 3A as "rusty." He said it was a "cap style" fastened by eight screws. The jury is entitled to hear his testimony about the rear grille and believe or disbelieve it.

There will be testimony from both fact and expert witnesses that the rear grilles provided by GE as either original or replacement parts were made of aluminum and that eight screws inserted from outside-in were never a fastening means used by GE.

Dr. Moalli and Dr. Reitman are material experts. They can provide helpful information to the jury that aluminum does not rust. They can provide helpful information to the jury of the facts observed in their investigation and the data they have reviewed reveals that the rear grille described by Mr. DeFelice is not a rear grille ever supplied by GE. Plaintiff's experts have admitted this.

The identity of the supplier of the rear grille is part of Plaintiff's prima facie case. Testimony about this issue is relevant and should be heard by the jury.

C.  **The cause of the missing fasteners and grille is unknown and a matter of pure speculation and the limitations of science or technology to reveal a cause for missing objects which cannot be observed, inspected and tested is an appropriate subject for expert testimony**

In this case other than the testimony of Ms. Hull and Mr. DeFelice there is no testimony about the fasteners present before the rear grille of the wall sleeve for Unit 3A fell off in the Fall of 2001.

The Plaintiffs experts have admitted that the history of these fasteners is unknown and that they cannot rule out a failure due to misinstallation, impact,

3

chemical attack or other factors. The Plaintiffs experts have admitted that there is no information about the time or manner of installation of the fasteners.

Even if one assumed that a grommet and screw were present in 2001 there is no evidence, other than speculation, about the condition of either a screw or grommet before, during or after an installation which Plaintiff assumes happened over 30 years before the fire. There is no evidence that two screws were installed. There is no evidence that the screws were tightened or left loose.

There is no evidence that the screws were not over tightened. There is no evidence that the screws were put in straight. There is no evidence as to whether or how often the fasteners were removed during the 30 years. There is no evidence of the capabilities of any installer. There is no evidence of impacts received by the grille or hardware from ice, wind blown objects, human activity, or the known construction activities performed all around the grille in the late 1990's. There is no evidence of the effects of chemicals sprayed in the vicinity of the grille. There is no evidence of whether the grille was lost in the Fall of 2001 because of a screw or screws being loose or because of a screw failure as opposed to a speculated failure of an assumed grommet.

In short, there is no way other than speculation that anyone could draw any reliable scientific opinion about the reason for fasteners being missing in the Fall of 2001 especially where they were not observed, inspected or tested.

In this case the Defendant is entitled to a judgment in its favor if the evidence reveals that there are a cause or causes of the fasteners being missing which may

be as reasonably attributed to a condition for which the Defendant has no liability. Maher v. General Motors Corp., 370 Mass. 231, 234, 346 N.E. 2d 833, 835 (1976).

GE's experts should be permitted to testify about the speculative nature of Plaintiff's case.

**D.   There is no reliable foundation which would permit any "comparison" between the supposed condition of missing fasteners and the post-fire condition of other fasteners not in issue**

In order for testimony comparing between the condition of a product in issue at the relevant time and some other object or demonstration there must be a foundational showing of substantial similarity of circumstances. Fusco v. General Motors Corp., 11 F.3d 259. 263-4 (1st Cir. 1993); Kuruza v. General Electric Co., 510 F.2d 1208, 1211-12 (1st Cir. 1975); Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 492 (1st Cir. 1996).

In this case, the "method" employed by Plaintiff's experts to base their opinions concerning the design of fasteners attributed to GE and their supposed failure was to "compare" these assumed fasteners with the post-fire condition of fasteners not in issue. There is and cannot be any foundation of substantial similarity between non-existent fasteners and different fasteners observed at a much later time after the fire.

As outlined above, there is hardly anything known about the fasteners for the rear grille of Unit 3A or their (its!) condition in the Fall of 2001.

The Plaintiff's experts seek to "compare" this substantially unknown condition of the Unit 3A supposed fasteners with the post-fire condition of the fasteners for two

5

other units. There is no foundation which would permit a finding of substantially similar circumstances.

Nothing is known about the installation or history of the fasteners from Units other than 3A, which Plaintiff's experts have admitted. Nothing is known about abuse, misuse, removal, alteration or chemical attack of these fasteners. The fasteners for the units other than Unit 3A were subjected to the heat of the fire and the impact of the firefighting efforts. These fasteners were at least 9 months older than the supposed fasteners for Unit 3A. Travelers selectively chose these fasteners while ignoring and not preserving the fasteners from multiple other air conditioners at Ocean Terrace.

There is no reliable basis for testimony that there is any substantial similarity between the fasteners for Unit 3A alleged to be in issue and the post-fire condition of other fasteners.

In short, the Plaintiff's case is based on <u>ipse</u> <u>dixit</u> speculation and GE is entitled to show the nature of speculation.

### III. Conclusion

For the foregoing reasons, GE respectfully requests this court to deny Plaintiff's motion in limine.

                              Respectfully submitted,

                              GENERAL ELECTRIC COMPANY,
By its attorneys,

**CURLEY & CURLEY, P.C.**

_____
Robert A. Curley, Jr., Esq.
BBO# 109180
27 School Street, 6th Floor
Boston, MA 02108
(617) 523-2990

Dated: 11/16/07

### CERTIFICATE OF SERVICE

I, Robert A. Curley, Jr., Esq., hereby certify that I served a true copy of the foregoing pleading by mailing a copy postage prepaid to the following counsel of record:

Paul T. Falk, Esq.
Falk Johnson LLC
20 South Clark Street
Suite 1990
Chicago, IL  60603

Steven B. Stein, Esq.
Law Offices of Thomas M. Niarchos
100 Summer Street, Suite 201
Boston, MA  02110

Ronald W. Harmeyer, Esq.
Falk Johnson, LLC
Bank One Plaza
111 East Wisconsin Avenue
Suite 1370
Milwaukee, WI  53202

Robert A. Curley, Jr.

Dated: 11/10/07